Mississippi Centennial Exposition Co. *v.* Luderbach et al. (First National Bank of Gulfport, Garnishee).

[86 South. 517, No. 21226.]

1. Constitutional Law.  *Statute construed not to impair obligations of contracts of counties and municipal donations.*
   Chapter 241, Laws of 1918, authorizing certain suits against the Mississippi Centennial Exposition Company, is not unconstitutional because of the impairment of the obligation of contract as applied to donation funds by counties and municipalities for certain purposes as authorized by chapter 113, Laws of 1916.

2. States.  *Act construed not to authorize suit against Mississippi Centennial Exposition Company for breach of contract, but only suit for material contracted for or furnished.*
   Suits against the state and its governmental agencies cannot be maintained unless authorized by an act of the Legislature, and

chapter 241, Laws of 1918, does not authorize a suit against the Mississippi Centennial Exposition Company for a breach of contract. A suit can only be instituted under that act for material contracted for by, or furnished to, such company. It does not authorize suits for any other class of demands.

3. PLEADING. *Demurrer to plea relates back to declaration if that is demurrable.*

Where a declaration is filed that does not state a cause of action, and a plea is filed thereto by the defendant, and where such plea is demurred to by the plaintiffs, such demurrer will relate back to the declaration and challenge its validity, and should be sustained as relating to the declaration.

APPEAL from circuit court of Harrison county.

HON. D. M. GRAHAM, Judge.

Action by L. Luderbach and L. E. Luderbach, partners doing business under the style of Luderbach Plumbing, Heating & Electric Company, against the Mississippi Centennial Exposition Company. Verdict for plaintiffs, and, on a subsequent suggestion of garnishment against the First National Bank of Gulfport, there was a judgment for plaintiffs and the defendant and the garnishee appeal. Judgment reversed, and judgment entered for defendant.

See, also, 84 So. 165.

L. Luderbach and L. E. Luderbach, a partnership doing business under the style of Luderbach Plumbing, Heating & Electric Company, filed suit against the Mississippi Centennial Exposition Company, a body created by the legislature of 1916 under chapter 113, Laws of 1916, claiming authority to bring suit against the defendant under the terms and provisions of chapter 241, Laws of 1918; alleging that the defendant is indebted to the plaintiffs in the full sum of nine thousand, one hundred seventy-five dollars and fifty cents with interest from September 6, 1917, at six per cent. Alleging further: That on the 29th day of March, 1917, the plaintiffs and the defendant entered into a contract by which the plaintiffs agreed to construct and complete the electric system for the lighting of the buildings and grounds of the defendant, the plaintiffs fur-

nishing the necessary materials and labor to construct said electric lighting system at and for the sum of twenty-eight thousand, seven hundred forty six dollars, making the contract an exhibit to the declaration; and that upon the execution of said contract that the plaintiffs entered into bond for the complete and faithful performance of said contract in accordance with each and every condition of the specifications prepared by the defendant's architect, and that said bond was approved and accepted by the defendant, and that thereupon the plaintiffs ordered and purchased all materials necessary to enable them to carry out said contract and began to perform the necessary work. That among other things necessary to be supplied by the plaintiffs in carrying out said contract was a quantity of underground cable which has to be specially manufactured, at a cost to the plaintiffs of nine thousand, five hundred, eleven dollars an ninety-five cents, an itemized bill of which material is made an exhibit to the declaration. That the plaintiffs were not permitted to complete their part of the contract, but were forbidden by the defendant to proceed with the same, notwithstanding the fact that plaintiffs were at all times free from fault.

That in May, 1917, defendant notified plaintiffs, who had already ordered and purchased material for the completion of said contract, to cancel all orders placed by them for material. That the plaintiffs were unable to cancel orders for material set out in Exhibit C, which had to be specially manufactured. That the plaintiffs undertook and tried to procure cancellation for the order of the manufacture of this material, but were unable to do so and were compelled to accept and pay for said cables. That the plaintiffs notified the defendant that they had been unable to procure the cancellation of the said order for the underground cable and then and there demanded of the defendant the sum of nine thousand, five hundred eleven dollars and ninety-five cents, which sum the plaintiffs were forced to pay for the said cable and notified the

defendant, who had breached the contract, to save plain-
tiffs harmless from damage on account of said purchase
by them to carry out the contract, which the defendant
had so breached.  That the persons from whom plaintiff
purchased the said cable shipped the same to Gulfport,
Miss., and that the plaintiffs were compelled to accept
and pay for the same, and that the "plaintiffs then and
there delivered same to the defendant by storing the same
on the grounds of the defendant where the same now re-
mains, less certain items hereinafter mentioned."

That afterwards the plaintiffs applied to the defendant
for relief in the premises and offered to waive all the
profits if defendant would pay the actual cost of said
cable to the plaintiffs, and that the defendant refused and
failed to relieve plaintiffs and notified plaintiffs they
would pay nothing on account thereof.  Whereupon the
plaintiffs, in order to diminish their damages, made ef-
forts to sell the said underground cable, but were unable
to do so, except they found a purchaser for four hundred
and fifty feet of the cable which was sold for the sum of
three hundred thirty-five dollars and forty-five cents which
was duly credited to the defendant.

The contract made exhibit to the declaration is rather
lengthy, but in substance provides that in consideration
of the price therein mentioned the plaintiffs agreed to
furnish all labor, tools, equipments, supplies, fixtures, and
material, to do all work and other things necessary for the
proper construction and completion of a complete elec-
trical system in and for said buildings therein named
located upon the grounds of the defendant.  According to
the proposal and bid of the said party, the plaintiffs, and
according to the plans and specifications prepared by one
Lewin, an engineer, which plans and specifications are
made a part of the contract, the said plaintiffs were to
furnish the said material and work according to the plans
and specifications "so as to furnish and complete a com-
plete electric system for the entire grounds and buildings
herein mentioned  .  .  .  at and for the sum of twenty-

eight thousand, seven hundred forty-six dollars." Said work to be completed on or before September 1, 1917, with a provision for liquidated damages of fifty dollars per day for each day the contractor failed to complete the said system after the 1st of September, 1917. In consideration of the above provisions on the party of the second part, the plaintiff, the party of the first part, hereby agrees to pay the party of the second part for the said labor, materials, work, etc., as aforesaid the sum mentioned and in the manner and under the conditions set forth in the specifications.

To this declaration the defendant filed two pleas: First, that neither this court, nor any other court, has jurisdiction to render a judgment against the defendant in this cause, because it says that this defendant was created by chapter 113, Laws of 1916, and was and is a governmental agency and an arm of the government of the state of Mississippi and not subject to suit; and, second, that by section 8, chapter 113, above mentioned, it is provided that boards of supervisors and boards of municipalities authorized and empowered to appropriate money, give notes, or issue bonds in accordance with law for the purpose of supplying funds for the use of the defendant in carrying out the provisions of the act creating it, and by section 7 of the said chapter, it was provided that the contributions received from the counties and municipalities should be used in the construction of buildings, for exploiting and advertising the resources of the state of Mississippi. That by section 11 of the said chapter it is provided that the exposition shall be under the control of the commission and that the lands and buildings directed shall be deeded in fee simple to Mississippi and any surplus be held in trust by the commission for the use and holding yearly a mid-winter exposition to exploit the resources of the state. And that on the face of these provisions the city of Gulfport had issued one hundred twenty-five thousand dollars in bonds and paid the proceeds over to the defendant, the board of supervisors of Harrison county had paid a

like amount, and that other towns had made similar contributions and subscriptions; and that by reason thereof the transaction constituted a contract between the Mississippi Centennial Exposition Commission, and that chapter 241, Laws of 1918, is retroactive in effect and impairs the obligations of such contracts, and it is therefore unconstitutional and void.

These pleas were demurred to by the plaintiffs, and on the filing of said demurrers the defendant moved the court to make the demurrer relate back to the declaration, which the court declined to do, but sustained the demurrers to the plea of the defendant. Thereupon the defendant pleaded that it is not indebted to plaintiffs, as alleged in the declaration, and, second, that it did not undertake and promise in the manner and form as the declaration alleged; and, third, that it never at any time received from the plaintiffs the material constituting the subject-matter of this suit, nor any part thereof, but that at all times refused so to do, and it thereupon became the duty of the plaintiffs to convert the material into money at the best available price and thereby reduce his damages as much as possible, but the plaintiffs refused and wholly neglected so to do.

To this plea last set forth the plaintiffs filed a replication setting forth that the defendant did not refuse to receive the material so mentioned or any part thereof, and that the plaintiffs were not under duty to convert said material into money, but that afterwards the defendant itself made ineffectual efforts to sell the same, and that, after the defendants had refused to permit the plaintiffs to complete their contract and had declined and refused to pay the plaintiffs for said material, the plaintiffs did endeavor to sell the material for the defendant's benefit, but were unable to do so, except as stated in the declaration.

Rejoinder was filed to this by the defendant, which says that it is not true that the defendant made ineffectual, or any other, effort to sell the material constituting the sub-

ject-matter of the suit. The cause thereupon proceeded to trial and was tried upon the theory that the plaintiffs were entitled to recover from the defendants the amount of damages suffered by reason of the breach of the contract by the defendant.

One of the instructions for the plaintiff reads as follows:

· "The court instructs the jury for the plaintiffs that, as a matter of law, under the evidence in this case, the defendant wrongfully breached its contract with plaintiffs; and plaintiffs are entitled to recover that much of the loss shown by the evidence to have been sustained by them because of such breach as could not have been prevented by the exercise of reasonable diligence on their part to reduce their damages after the breach occurred."

There was a verdict for the plaintiffs for the amount sued for, and subsequently a suggestion of garnishment was filed, and the First National Bank of Gulfport was garnished and answered, setting forth certain funds in its possession subject to the check of the Mississippi Centennial Exposition Company and setting up in its answer the suggestion that the property was not subject to garnishment in that the funds belonged to the state and suggesting the unconstitutionality of chapter 241, Laws of 1918, and suggesting that the state and its subdivisions were not subject to garnishment. There was a judgment for the plaintiffs on the garnishment proceedings, from which judgments an appeal was prosecuted by the First National Bank of Gulfport and by the Mississippi Centennial Exposition Company.

*White & Ford,* for appellant.

Responding to the request of the court for briefs addressed to the point as to whether the Mississippi Centennial Exposition Company is a Governmental agency, and whether it is subject to suit, independent of the provisions, of chapter 241, Laws of 1918, we respectfully submit the following suggestion:

We have proceeded on the theory that it is necessary in order to maintain a suit in a court of law, that there must be a plaintiff with capacity to sue, and a defendant entity capable of being sued; and that as no one can be made such defendant except a natural person, or an association of persons responsible in their capacity as partners, or an artificial person, or body created and clothed by statute with capacity to be sued; and that as the appellant is neither a natural person, partnership nor corporation, but a commission created by statute, its personnel appointed by the Governor, for the purpose of holding an exposition for the state, and performing certain duties required of them by law, acting not in their own behalf, but purely in their representative or official capacity, that they were not subject to suit unless they could be sued in their representative capacity as agent for their principal, such suit being in effect a suit against their principal; and as their principal is a sovereign state, appellant could only be sued as authorized by statute.

This view seems to have been concurred in by the able counsel for appellee, and it was certainly concurred in by the legislatures; otherwise chapter 241 of the Acts of 1918, would never have been enacted. We insist that this position is supported by a careful examination of the Acts creating the Mississippi Centennial Exposition Company, Laws of 1916, chapter 113. By section 1, it is provided: "That there shall be held at Gulfport, Mississippi, an exposition commemorating the one-hundredth anniversary of the admission of Mississippi into the Union as a state."

Section 2 provides that the commission shall be composed of twelve men to be appointed by the Governor, and that the Governor, Lieutenant Governor and Speaker of the House of Representatives shall be *ex officio* members of said commission. And by section 3 it is provided that members of the commission already in the employ of the state and receiving a salary from the state shall serve without additional salary, except traveling expense and those not already in the employ of the state shall receive

the sum of five dollars per day for the time actually employed, the salary and expenses to be paid out of funds raised to defray the expense of the exposition.

Section 5 provides that, "The Mississippi Centennial Exposition Company shall be the name under which said exposition may transact all of their business, and make all contracts. They are authorized and empowered to receive money from the state, municipalities and counties of Mississippi and donations from any sources whatever."

Section 6 provides, "The object of this exposition is to do everything which will secure proper exhibits of Mississippi's resources of every kind, and to exemplify its historical and political history, and to receive exhibits from foreign countries."

Section 7 provides that contributions shall be used in the construction of buildings and making exhibits from counties and municipalities, and for exploiting and advertising agricultural, horticultural, live stock, and other resources of the state of Mississippi. Section 9 provides that a complete itemized statement of moneys collected and expended under the provision of that act should be made to legistature within ten days from the date of convening of each regular session after centennial.

Section 11 provides that the exposition shall be held under the control of the commission and shall be known as a state exposition and the land on which the Mississippi Building and Coliseum is erected shall be deeded in fee simple to the state of Mississippi, and further provides for holding yearly and mid-winter expositions to exploit certain resources of the state.

In addition to the provision of chapter 113, the legislature, by chapter 69 of the Laws of 1916, appropriate one hundred twenty-five thousand dollars to aid in establishing and maintaining the exposition and to be used in erecting and equipping said building, and coliseum on land deeded in fee simple to the state of Mississippi, and in maintaining and beautifying such buildings and the grounds on which they are erected and for the purpose of

making and exploiting agricultural and horticultural, industrial and other resources of the state.

Section 2 of said act provides that the state shall not be liable for any expense or debts incurred exceeding the amount appropriated by this act. This appropriation of one hundred twenty-five thousand dollars was made contingent upon a like appropriation being made by the county of Harrison and the city of Gulfport, which was done. From the foregoing it will be seen that this commission was created, by and was acting under the control, and direction of the state of Mississippi, in furtherance of an enterprise created by the state, for the benefit of the state, exclusively.

In the case of *Wilson* v. *Louisiana Purchase Exposition Commission,* the supreme court of Iowa held that a suit against the exposition company was a suit against the state, and could not be maintained. The only difference between that case and this was the fact that all the funds of said exposition were furnished by the state of Mississippi, one-third by the county of Harrison, and one-third by the city of Gulfport, the management, control and direction of the said commission by the state of Mississippi being as complete as that of the state of Iowa in the matter of the Louisiana Purchase Exposition Commission. *Wilson* v. *Louisiana Purchase Exposition Commission* from the supreme court of Iowa, March 11, 1907, 110 N. W. 1045.

The only Mississippi case that we have found that bears on the question under discussion is the case of *State* v. *Woodruff,* 85 Miss. 111, where the court held that the board of levee commissioners appointed by the state were subject to suit; but in that case, the court based its ruling on the fact that the legislature expressly authorized the board of commissioners and the successors in office to sue and be sued, plead and be impleaded, contract and be contracted with, and have perpetual succession for the purpose designated in the act.

"Suits against officers of a state as representing the state in action and liability, and in which the state although not a party to the record, is the real party against which relief is sought and in which a judgment for plaintiff, although nominally against defendant as an individual could operate to control the action of the state or subject it to liability are suits against the state."

36 Cyc., page 915, citing decisions from the courts of practically every state in the Union and of the United States. "A suit against a department of the state government or a board or corporation created by the state for governmental purposes is a suit against the state, and cannot be maintained without its consent." 36 Cyc., page 919.

In the case of *Lane* v. *Minnesota State Agricultural Society,* 29 L. R. A., page 708, the court said: "That state may and must commit the discharge of its sovereign political functions to agencies selected by it for that purpose. Such agencies, while engaged exclusively in the discharge of such public duties, do not act in any private capacity, but stand in the place of the state, and exercise its political authority. Therefore, when the state creates public corporations solely for governmental purposes, such corporations, while engaged in the discharge of the duties imposed upon them for the sole benefit of the public, and from the performance of which they derive no compensation or benefit in their corporate capacity and clothed with the immunities and privileges of the state; and no private action, in the absence of an express statute to that effect, can be maintained against them for negligence in the discharge of such duties.

The court in that case held that the rule, however, had no application to private corporations, that is, to those which are organized by the voluntary act and agreement by the members for their own benefit, although the creation of such corporation directly promotes the public interest and welfare.

But in the instant case, appellant was not organized for private gain, but was created for the sole benefit of the public. Not one dollar of profit was to go to the defendant, nor to any individual member of the commission, but was to be accounted for to the legislature (section 9) and any surplus was to be "held in trust by the commission for use in holding yearly mid-winter expositions to exploit agricultural, live stock and other resources of the state of Mississippi. (section 11).

In the case of *Alabama Girls' Industrial School* v. *Reynolds,* 42 So. 11, the court said, that the complainant is a mere agency of the state, instituted and maintained for the purpose of providing for the girls of the state an industrial education and that all the property interests in it is owned by the state does not admit of serious doubt— This being true, any action or suit against it is really and substantially one against the state, and it must be held to be protected against all actions or suits where the state is protected against all actions or suits.

To the same effect are the following cases: *Oklahoma Agricultural College* v. *Willis,* 6 Okla. 593, 40 L. R. A. 677; *Moody* v. *State Prison of N. C.,* 128 N. C. 12, 53 L. R. A. 555. See also note to *State, ex rel, Little* v. *Board of Regents of University of Kansas,* 29 L. R. A., page 383.

We submit that this appellant was not subject to suit except as authorized by chapter 241, Laws of 1918.

*R. H. Thompson,* for appellees.

Brief for appellees upon the question propounded by the court after the submission of the case.

The questions propounded are these: (A) Is it subject to suit independently of the statute, Laws of Mississippi, 1918, chapter 241? We are unable to see the relevancy of the question to the case at bar, because the suit was instituted after the passage of the statute and, as shown in our original brief, was brought by the pleadings with-

in its terms; nor do we think the questions propounded by the court were legitimately raised in the court below. We will nevertheless answer the court's inquiries as best we can.

The exposition company we assert with confidence, was a corporation, or a *quasi* corporation, empowered to contract with third persons, and it was and is liable to be sued for breaches of its contracts and for such damages as are demanded in the declaration in this case.

The Pot-hooks case. The state of Kentucky shortly before the World's Fair, held at Chicago in 1893, by statute created a Kentucky board of managers of the World's Columbian Exposition. The board was given power to employ necessary agents and employees, was required to have a suitable building erected at Chicago for Kentucky headquarters, the building to contain the necessary restaurant and refreshment accommodations, to be let to the highest and best bidder and the proceeds covered into the treasury of the board; and the board was granted powers to effectuate the purposes for which it was created. It was not designated in the act as a corporation. Its powers were strikingly similar to the powers granted the Mississippi Centennial Exposition Company.

The act creating the Kentucky board appropriated one hundred thousand dollars from the state treasury to be used by the board. It did not, however, contemplate that the whole sum should be drawn from the treasury at once, but did not expressly prohibit such action. The board having organized made a contract with one Gross to run the restaurant and supply the refreshment accommodations in the Kentucky Building at the fair, and afterwards breached the contract to Gross' damage. Afterwards, in November, 1903, Gross sued the Kentucky board for breach of the contract. The board demurred to his declaration assigning as cause that the board was an agency to the state and therefore not subject to be sued.

The Kentucky legislature, after the entire appropriation had been drawn from the treasury, passed a joint

resolution, reciting the facts and declaring that in order that the public and all persons interested might have full knowledge in the premises, it resolved that the state would not assume the payment or pay any expenses, charges, arrears or indebtedness, if any, whatsoever remaining unpaid after the expenditure of the appropriation theretofore made.

If the state was liable for the debts incurred by the board, the resolution did not release, nor could it have released it from liability. If the state was not liable the only effect the resolution could have had was to prevent improvident persons from crediting the exposition board. While the Kentucky legislature resolution is of no consequence, yet it has a parallel in the legislature of this state, the proviso, to Laws of Mississippi 1918, chapter 241, being similar to the Kentucky resolution, thus making the cases more strikingly similar.

In *Gross v. Kentucky Board of Managers of World's Columbian Exposition* (Decided February 9, 1899), 43 L. R. A. 703, it was decided that the board was subject to suit by a party damaged by its breach of contract. The only question in the case was whether the exposition board was such an agent or agency of the state as exempted it from being sued. The highest appellate court of Kentucky said:

"The rule is well settled that the state cannot be sued, and that the same protection is extended to the officer of the state. But this rule does not apply to a corporation created by the state for certain public purposes. If appellee was made by the acts referred to a corporation or a *quasi* corporation, we see no reason why it should be exempted from the rule allowing suits to be brought against corporations, on contracts they have made. So the question is presented whether appellee was invested by the legislature with the character of a corporation or *quasi*-corporation. It is not necessary that the thing created by the legislature should be named by it a corporation. Its character depends upon the powers given it and not

upon the name by which the legislature may call it. Following a decision of this court the supreme court of the United States, in *Hancock* v. *Louisville & N. R. Co.*, 145 U. S. 409, 36 L. Ed. 755, said: By the act of 1869 this prescribed portion of Shelby county was authorized to issue bonds and subscribe stock. The bonds when issued were not the obligations of Shelby county, nor of the individual taxpayers, and still there must be some debtor. That debtor was this portion of Shelby county. Giving to it power to issue bonds and create indebtedness is the creation of an entity with power to act, and if this entity has power to create a debt, it becomes subject to suit. That this entity was not, in terms, named a corporation is not decisive. It is enough that an artificial entity was created, with power to exercise the functions of a corporation. It was, though not named, a corporate entity."

In *Dunn* v. *University of Oregon,* 9 Or. 357, as reported note on p. 245, 35 L. R. A. (N. S.), the supreme court of Oregon said: "The immunity of the state from suit does not extend to a board of directors of a state university, who hold the title and possession of property against which a valid claim exists in favor of a third person. *Dunn* v. *University of Oregon,* 9 Or. 357. The court said: "But it is contended by appellant that whether incorporated or not, the boards of directors are mere agents or officers of the state, and hold the property in controversy in trust for the state, the real party in interest. Hence they infer that the board of directors are shielded by the immunity from suit which belongs to the state. But this is an error. The immunity of the principal in such a case does not extend to the agent. It matters not if the state is the real party in interest, provided the legal title and possession are in the agent, so that it is not necessary to make the state a party on the record. . . . An agent of the state, whether incorporated or not, by virtue of his character, simply possesses no such immunity from being sued.

There are cases to be found in the books holding that where the state's immunity from suit may be pleaded by its officers yet it can be done only where the officers have acted in strict accordance with statutory authority and this is certainly the law. In the case at bar no authority was given the exposition company to abandon the purpose for which it was created and Luderbach's contract was breached by an unauthorized refusal of the exposition company to perform its duties. It is sure the company had no statutory or other right to breach the contract sued upon in this case; it had no legal right to abandon the holding of the exposition. The war with Germany, and the conditions arising therefrom may morally excuse the abandonment, but cannot legally excuse the damage done Luderbach. In *Dunn v. University of Oregon, supra,* it is said, an agent of the state, whether incorporated or not, simply by virtue of his character as agent, does not possess immunity from being sued. He must show in his defense to an action or suit for interfering with private rights, that he proceeded within the authority conferred by a valid law, or his defense must fail.

The exposition company was not authorized by the act creating it to contract in the name of the state but was authorized alone to contract in its own name. Mississippi Law, 1916, chapter 113. This shows, we submit, that the legislature did not intend that the state should be legally liable on the commissioners' contracts or for breaches of such contracts. See what is said on this subject by the Kentucky court in *Gross v. Kentucky Board of Managers, etc., supra,* 43 L. R. A. Second Column, p. 704.

## ANSWER TO APPELLANT'S BRIEF.

It seems to us very clear that the case of *Wilson v. Louisiana Purchase Exposition Commission* (Ia.), 110 N. W. Rep., 1045, is not in point. That case was a petition for a mandamus to compel the approval and allowance by the exposition company of a claim against the

state.   The petition alleged that the sum due the peti-
tioner was due by the state of Iowa.

The case of *Lane* v. *Minnesota State Agriculture So-
ciety* (Minn.), 29 L. R. A. 708, cited by appellant's at-
torneys, does not maintain their proposition.   That case
was a suit by a woman who seems to have been a jockey
and who was injured by being thrown from a horse while
racing at the Minnesota State Fair.   She sued the agri-
culture society of that state having charge of the Fair
in tort for damages received by her.   The court decided
that the agriculture society was not exempt from suit
even for injuries inflicted by its negligence.   The Minne-
sota court recognized the qualification to the general rule
that the state is immune from suits affirming that the
defendant, a *quasi*-corporation, was not exempt from li-
ability to which other corporations are subject for negli-
gence in dealing with property formerly held by them
although inuring strictly to the benefit of the public.

The case of *Alabama Girls' Industrial School* v. *Rey-
nolds* (Ala.), 42 So. 114, was a suit by the industrial
school against Reynolds, its treasurer, for an accounting
in order to ascertain the sum due by him to the school and
to compel him to produce documents necessary to an ac-
curate and full accounting.   To the bill of complaint in
the case, Reynolds, the defendant, filed a cross-bill charg-
ing that the school was largely indebted to him, and the
question arose whether the school was a governmental
agency.   The supreme court of Alabama held that it was
a mere state agency for the exercise of governmental func-
tions.   It appears from the opinion of the court that the
decree rendered in Reynolds' favor by the chancery court
from which the case was appealed, if paid at all, would
have to be paid out of public funds, in the treasury of the
state and would have had the same effect as if it were
rendered directly against the state.

The court decided that the Alabama Girls' Industrial
School was a mere state agency for governmental purposes
and that any decree rendered against it by name, if paid

at all, would have to be paid out of the state treasury and therefore reversed the decree rendered in Reynolds' favor on his cross-bill. That case is not parallel to the one at bar.

The case of the *Oklahoma Agricultural & Mechanical College* v. *Wills* (Okla.), 40 L. R. A. 677, is very much like the Alabama case. The Oklahoma court quotes from the Dartmouth College case in which Chief Justice Marshall delivered the opinion of the majority of the court said: "That education is an object of national concern, and a proper subject of legislation, all admit. That there may be an institution, founded by government, and placed entirely under its immediate control, the officers of which would be public officers, amenable exclusively to government, none will deny, and decide that the Agricultural & Mechanical College of that state was a governmental agency not authorized to contract in its own name, but whatever contracts it made, they were made by public officers and, if valid, binding on the state. The institution was entirely a territorial state institution, created by legislation for state purposes only, was managed and controlled exclusively by legislative authority and derived its whole support from public funds.

There can be no question but that education is a public and governmental purpose but the holding of expositions, the show business, is not a governmental function. The case of *Moody* v. *State Prison of North Carolina,* 128 N. C. 12, 53 L. R. A. 855, was a case wherein the plaintiff sued the state prison of North Carolina for damages received because of a defective ladder used by the plaintiff in performing some prison duty. The opinion of the court was delivered by Clar, J., who puts emphasis upon the fact that it was substantially, a suit against the state that the defendant was a mere agent of the state in administering its government. The plaintiff's demand was to control a state prison essentially a governmental function, it being a department of the administration of the criminal laws of the state. The exemption of a state from suit ap-

plies only, when the state is administering the functions of government through its appointed agents and officers; certainly the agents can claim immunity only when the state through them is performing a governmental function pure and simple. In the North Carolina case a judgment in favor of the plaintiff would have to be paid out of the state treasury and not out of money appropriated and at the disposal of their prison trustees.

Ethridge, J., delivered the opinion of the court.

(After stating the facts as above). The first question presented is: Is chapter 241 of the Laws of 1918 unconstitutional as impairing the obligations of contracts? It will be noted that all of the parties to the alleged contracts are agencies of the state, that is, the Mississippi Centennial Exposition Company, the several counties and municipalities; no private corporation or person having any interest in or claim to the funds so donated or subscribed under the provisions of chapter 113, Laws 1916. The funds so dealt with are public funds over which the legislature has control, and we think that, if there be any features of contract in the several matters set forth, they are not protected by the constitutional provisions, either state or federal, prohibiting the impairment of the obligations of the contract. All of these boards are creatures of the legislature, and there is no doubt in our minds of the power of the legislature to direct and control the funds in question so as to make them subject to the demands of the contract sued on if the power to sue exists.

Do the terms of chapter 241, Laws 1918, authorize the suit stated in the declaration? This chapter reads as follows:

"Be it enacted by the legislature of the state of Mississippi, that the Mississippi Centennial Exposition Company, created by statute approved March 28, 1916, shall be subject to suit by any person, firm or corporation now having an existing cause of action against said company

for material contracted for by, or furnished to said company, and such suit may be instituted and prosecuted in any court of competent jurisdiction in Harrison county; provided that this act shall in no way be construed to bind or hold the state of Mississippi for any judgment that may be obtained."

It is familiar learning that the state and its subdivisions and agencies are not subject to suit unless made so by statute; and the statute, where a statute exists, is the measure of the power to sue such board or agency. By the terms of this act as above set out, it appears that "any person, firm or corporation now having an existing cause of action against said company for material contracted for by, or furnished to said company," may institute, "and such suit may be instituted and prosecuted in any court of competent jurisdiction in Harrison county."

The declaration declares on a contract, which is made an exhibit to it, which provides for the completion of a complete electrical system for a gross sum. Under this contract the plaintiff, and not the defendant, was to furnish the material, labor, etc., which made up the completed electrical system. There is no obligation on the part of the exposition company to pay for materials as a separate item, or for labor as a separate item, or for any appliance as a separate item; but its obligation is to pay for the completed system, which, of course, embraces materials, labor, and supervision. The exposition company is not liable for the special or separate items. It may be and probably is true that the exposition company purchased from divers persons material for its use. The statute does not authorize a suit for damages for a breach of contract, and, taking the declaration as a whole and its several parts, it is essentially a suit for a breach of contract. It is true that the plaintiffs seek to limit their right to materials purchased by the plaintiffs (not by the defendant), for the construction of the completed electrical light system. The declaration undertakes to aver a delivery of these mate-

rials to the exposition company, but in doing so it sets forth how the alleged delivery was made as follows:

"And the plaintiffs then and there delivered same to the defendant by storing the same on the grounds of the defendant where the same now remains," etc.

The specification of how the delivery was made does not carry with it the essentials of a delivery in legal contemplation. But independent of this the contract on which the declaration is founded does not bring the cause of action within the statute. The substance of the pleading must be looked to, and in its substance it is a suit for a breach of contract, and not for material embraced in the contract.

We think the court below should have caused the demurrer to relate back, to the plaintiffs' declaration, and the demurrer to such pleading should have been sustained.

We do not deem it necessary now to pass upon the question as to whether or not the funds in the bank were subject to garnishment on a valid judgment against the defendant. That subject is not free from difficulty, and we will pretermit a consideration of it until it is necessary for decision.

From what we have said it follows that the judgment of the court below must be reversed, and judgment entered here for the defendant.

Reversed, and judgment here for appellant.

*Reversed.*