373 So.2d 252 (1979)
Rev. W.L. JAGNANDAN, Leonard S. Jagnandan and Edward R. Jagnandan
v.
MISSISSIPPI STATE UNIVERSITY, Dr. James D. McComas, Missippi Board of Trustees of Institutions of Higher Learning.
No. 51147.
Supreme Court of Mississippi.
July 11, 1979.
Mark Shenfield, Falls Church, Va., and Robert S. Catz, Cleveland-Marshall College of Law, Cleveland State University, Cleveland, Ohio, for appellants.
A.F. Summer, Atty. Gen. by Ed Davis Noble, Jr., Asst. Atty. Gen., Jackson, for appellees.
Before SMITH, SUGG and COFER, JJ.
COFER, Justice, for the Court:
Appellants W.L. Jagnandan, Leonard S. Jagnandan, and Edward R. Jagnandan brought suit against Mississippi State University, Dr. James D. McComas, its president and the Mississippi Board of Trustees of Institutions of Higher Learning, in the Chancery Court of Oktibbeha County to recover tuition amounts allegedly unconstitutionally charged against them as students of Mississippi State University (MSU).
The defendants, appellees, demurred generally to the Bill of Complaint on the grounds of sovereign immunity and res judicata. The chancellor sustained the demurrer and appellants have taken this appeal. We affirm the chancellor on the ground of immunity from suit and do not reach the res judicata ground.
The bill of complaint alleges that complainant W.L. Jagnandan and his sons, the other two complainants, moved to West Point in September 1969, at which time they were citizens of the Republic of Guyana, lawfully in this country as permanent resident aliens. Complainant's sons became MSU students in the fall 1970 term, and complainant W.L. Jagnandan enrolled therein as a special student in 1972. When the complainant's sons enrolled therein in 1970, the father undertook to procure recognition of his family as residents of this State for school tuition purposes, which undertaking was fruitless, and each was required to pay, and did pay, tuition charged on out-of-state students of the institution, an action taken under the mandate of Mississippi Code Annotated, section 37-103-23 (1972), providing that for purpose of charging tuition, in situations such as here involved, "All aliens are classified as nonresidents."
In January 1973 complainants filed suit in the United States District Court of the Northern District of Mississippi, challenging the constitutionality of the statute above mentioned, and on August 15, 1974, a three-judge federal court panel, assembled as required *253 by statute, held that the complainants' rights of equal protection of the law and due process of law under the Fourteenth Amendment to the Constitution of the United States were denied and therefore enjoined its future application. Jagnandan v. Giles, 379 F. Supp. 1178 (N.D. Miss. 1974). In their said federal court suit, they also sought recovery of $3,495 (the amount here prayed) which they claimed MSU had unconstitutionally exacted of them, but that Court refrained from ordering reimbursement thereof under the prohibition of the Eleventh Amendment to the United States Constitution, which prevents construction of the judicial power of the United States "to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State."
The defendants therein did not appeal from the District Court decision, supra, but the complainants appealed the denial of monetary relief and the circuit court affirmed the District Court. Jagnandan v. Giles, 538 F.2d 1166 (5th Cir.1976). Certiorari was sought but was denied on June 20, 1977. Jagnandan v. Giles, 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1083 (1977).
Accordingly, this suit was filed to undertake further, in a state court, to compel refund of the amount of the alleged overcharge of $3,495 as tuition.
Complainants' assignment of error pertinent to our decision is:
2. The Court below erred in holding this cause of action barred by sovereign immunity:
A. The Mississippi legislature has expressly consented to suits against Mississippi State University and its officials (the appellees);
B. Judicial relief is necessary to redress state and federal constitutional violations;
C. Where a remedy is provided for state constitutional violations, a state court cannot discriminate against the federal constitution by denying remedies for its violations;
D. Sovereign immunity must yield where necessary to enforce federal constitutional rights.
As quoted by the Jagnandans from Mississippi Centennial Exposition Co. v. Luderbach, 123 Miss. 828, 86 So. 517, 519 (1920):
It is familiar learning that the state and its subdivisions and agencies are not subject to suit unless made so by statute; and the statute, where a statute exists, is the measure of the power to sue such board or agency."
The case of Coleman v. Whipple, 191 Miss. 287, 2 So.2d 566 (1941), lays to rest the fact that the state institutions of higher learning are arms of, and that their property is owned by, the state.
The Act of February 28, 1844, by which the University of Mississippi was created, designated certain individuals as trustees and constituted them and their successors as a body politic to be known as "The University of Mississippi." Such trustees were not such as are defined by the law of trusts. They were the managing board or head of the university, and then and now constitute the University of Mississippi, created by the State through its Legislature, which, under its act of creation (Sec. 5) retains the right to repeal the entire act; its property is owned by the State and the university is an arm of the State, the State itself. State v. Vicksburg & N.R.R. Co., 51 Miss. 361, 365; Oklahoma, etc., College v. Willis, 6 Okl. 593, 52 P. 921, 40 L.R.A. 677; McDonald v. University of Kentucky, 225 Ky. 205, 7 S.W.2d 1046; University v. Maultsby, 43 N.C. 257; Trustees of University of Alabama v. Winston, 5 Stew. & P. Ala. 17; Dart. v. Houston, 22 Ga. 506. The acts creating the colleges now known as Mississippi State College (February 28, 1878) and Mississippi State College for Women (March 12, 1884, Laws 1884 c. 30) must be similarly construed and such construction is not at all affected by Chapter 127 of the Laws of 1932, creating a single board of trustees for all the state institutions of higher learning. (Emphasis added).

*254 (191 Miss. at 297, 2 So.2d at 567).
Appellants Jagnandans assert, however, that authority has been given to MSU to sue and be sued, by section 5 of Chapter XIX, Laws of Mississippi of 1878, incorporating MSU as a college of the State of Mississippi. They further argue that when the Constitution of 1890, Section 213A was amended, Laws of 1944, House Concurrent Resolution 13, to combine control of the State's institutions of higher learning, under a single board of trustees, MSU's power to sue and be sued was not wrested from it, but remains and its original meaning continues expressed in Mississippi Code Annotated, section 37-113-3 (1972), as follows:
The state institution of higher learning, as incorporated by an act of the legislature, approved February 28, 1878, by the name of the "Agricultural and Mechanical College of Mississippi," and established in pursuance of that act, shall continue to exist as a body-politic and corporate, by the name of the "Mississippi State University of Agriculture and Applied Science," with all its property and the franchises, rights, powers, and privileges heretofore conferred on it by law, or properly incident to such a body and necessary to accomplish the purpose of its creation; said university may receive and hold all real and personal property conveyed to it for such purpose.
We conclude that nothing in the constitutional amendment or in our statute law preserved and brought forward into either the amendment or the statute, MSU's power to sue and liability to suit. As pronounced in the federal court suit, Jagnandan v. Giles, 538 F.2d 1168, 1177-1178, supra, there is, in the law now being considered no clear declaration by the people or by the legislature that the power to sue and be sued, contained in the 1878 organic act, survived the constitutional amendment and statutes hereinabove considered.
In State v. Woodruff, 170 Miss. 744, 766, 150 So. 760, 762 (1933), this Court said:
... the state cannot be made liable to suit out of implications gathered from a statute or any group of statutes, but the right to sue the state must be expressly granted by statute, without which express grant no allowance to sue the state exists. (Emphasis added).
We find no merit in the other arguments which appellants made in favor of the state's having no control over whether it is sued in this case.
As pointed out in Reed v. Evans, 342 So.2d 290 (Miss. 1976), certiorari denied 430 U.S. 975, 97 S.Ct. 1666, 52 L.Ed.2d 370 (1977), appellants may find that their claim here pressed lends itself to an effort to obtain a special appropriation by legislative act. Being in such case a matter specifically addressed to the legislature, we express no view as to the propriety or impropriety of such effort or appropriation.
AFFIRMED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM and LEE, JJ., concur.
PATTERSON, C.J., and BOWLING, J., dissent for the reasons stated in Jones v. Knight, Miss., 373 So.2d 254, decided this date.