522 So.2d 219 (1988)
Linda GRANTHAM
v.
MISSISSIPPI DEPARTMENT OF CORRECTIONS, et al.
No. 57500.
Supreme Court of Mississippi.
March 2, 1988.
*220 Alvin M. Binder and Lisa B. Milner, Binder, Milner & Milner, Jackson, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Robert L. Gibbs, Asst. Atty. Gen., Jackson, for appellees.
Before ROY NOBLE LEE, C.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:

I.
Today's appeal arises from a tragedy that touches the heart and sears the soul of our parole system, yet we confront the reality that the system may not be sued. We know that possibility of parole is an indispensable part of a correctional policy with any hope of doing more good than harm. To the prisoner possibility of parole is hope itself. As well, we know the painful lesson of recidivism: that among those paroled it is a statistical certainty that some will strike again, if only we could know which ones.
Our state corrections and parole officials function within the tension of these polar realities. Their jobs in part are guided by statutes. Our law has long afforded substantial immunities to these officials in the face of plaintiffs' pleadings, and with good reason. Only where they act with gross disregard for the safety of society or in clear violation of statutory directive may they be charged to answer at the bar of civil justice.

II.
Clem V. Jimpson served twelve years and three months of a life sentence for murdering a convenience store clerk. On January 9, 1985, he was paroled. Approximately five weeks later, on February 12, 1985, Linda Grantham was returning from lunch to her job as Assistant Vice President of Deposit Guaranty National Bank in Jackson. Jimpson approached Grantham in the parking lot of the Raymond-Terry Road Branch Bank and attacked, assaulted and attempted to kidnap Grantham. When Grantham screamed for help, Jimpson shot her. Grantham is now permanently paralyzed from the neck down.
*221 Grantham has an action in tort against Jimpson but one of little worth as he no doubt is impecunious.
On March 25, 1985, Grantham commenced the present civil action by filing her complaint in the Circuit Court of the First Judicial District of Hinds County, Mississippi. That complaint, which has since been amended, names as Defendants the Mississippi Department of Corrections; the Mississippi Parole Board; and, in their individual and official capacities, the members of the Parole Board, B.C. Ruth, Ollie Sykes, Joann Kaelin, James R. Figgs, and Paul Carter; and Morris Thigpen, individually and in his former official capacity as Commissioner of the Mississippi Department of Corrections. Grantham charges that by paroling and releasing Jimpson the Defendants acted arbitrarily, negligently and with reckless disregard for the safety of society in general, and herself in particular.
Each Defendant filed a motion to dismiss, urging that the complaint fails to state a claim upon which relief may be granted, Rule 12(b)(6), Miss.R.Civ.P., and asserting a variety of immunities to suit. Discovery has been held in abeyance.
On July 31, 1985, the Circuit Court filed an opinion and entered an order dismissing the complaint on immunity grounds. Grantham was allowed to amend her complaint. On June 13, 1986, the Circuit Court finally dismissed the amended complaint, again on immunity grounds.
Grantham presents the instant appeal.

III.
Our procedural posture is important. All Defendants have been held immune to suit. Grantham's amended complaint has been finally dismissed without benefit of trial or even pretrial discovery.
When a complaint is tested via a motion to dismiss for failure to state a claim, its sufficiency in substantial part is determined by reference to Rules 8(a) and (e), Miss.R.Civ.P. Rule 8(a)(1) by and large pretermits any notion of fact pleading and requires only that in her complaint a plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief, ... ."
Rule 8(e) then provides
(1) each averment of a plea shall be simple, concise and direct. No technical forms of pleading or motions are required.
We have by reason of these rules held repeatedly that a motion to dismiss made under Rule 12(b)(6) should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. Lester Engineering Co., Inc. v. Richland Water & Sewer District, 504 So.2d 1185, 1187 (Miss. 1987); Canton Farm Equipment, Inc. v. Richardson, 501 So.2d 1098, 1103 (Miss. 1987); Bias v. Bias, 493 So.2d 342, 343-44 (Miss. 1986); Busching v. Griffin, 465 So.2d 1037, 1039 (Miss. 1985); and Stanton & Associates, Inc. v. Bryant Construction Co., 464 So.2d 499, 505 (Miss. 1985).
Our ground rules well in mind, we turn to Grantham's Amended Complaint where we find that she has alleged that:
(1) Defendants arbitrarily, negligently, and with reckless disregard for the safety of society in general, and Grantham in particular, paroled and released Jimpson;
(2) Jimpson and seventy-two other inmates were approved for parole and release on the same day;
(3) Defendants approved Jimpson's release without reviewing all pertinent information as required by Miss. Code Ann. § 47-7-17 (1972), a statute Grantham believes mandates that the Parole Board secure and consider all pertinent information regarding each offender being considered for parole "including the circumstances of his offense, his previous social history and criminal record, his conduct, employment and attitude while in the custody of the Department, and the reports of such physical and mental examinations as have been made";
(4) The Parole Board and its members had a ministerial duty to consider the information set forth in Section 47-7-17 and to *222 make arrangements for Jimpson's proper employment or for his maintenance and care, and that they failed to perform these duties;
(5) The Parole Board and its members were grossly negligent in that they devoted less than five minutes to consideration of Jimpson's parole;
(6) The Parole Board and its members' decision to parole Jimpson was entirely outside the scope of their authority as they neglected or intentionally failed to follow the statute;
(7) Defendant Morris L. Thigpen and the Mississippi Department of Corrections negligently or intentionally failed to provide the Parole Board with information, which by statute, it should have considered before releasing Jimpson;
(8) The Parole Board and its members intentionally or negligently failed to ask for the same;
(9) All Defendants, collectively, acted negligently, in excess of their legal authority, and in complete disregard for the safety of society in general, and Plaintiff in particular, by releasing Jimpson.
Considering separately Grantham's claim against each Defendant (or group of Defendants), can it be said with reasonable certainty that there is no set of facts consistent with her allegations upon which she would be entitled to any relief against any Defendant?

IV.

The Parole Board and the Department of Corrections
We consider first Grantham's claims against the Parole Board and the Department of Corrections as legal creatures and entities of the state of Mississippi. The Circuit Court dismissed these claims on sovereign immunity grounds.
The judicially created doctrine of sovereign immunity was abolished by this Court in Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982). The Court set July 1, 1984, as the effective date for recognition of state tort liability. In 1984, the legislature enacted a statute waiving the sovereign immunity of the state and its political subdivisions. See Laws, 1984, ch. 495, §§ 1, et seq., pp. 640-66. However, the act also provided that it would:
apply only to claims that accrue on or after July 1, 1985, as to the state, and on or after October 1, 1985, as to political subdivisions. Claims that accrue prior to July 1, 1985, as to the state or, prior to October 1, 1985, as to political subdivisions, shall not be affected by this act but shall continue to be governed by the case law governing sovereign immunity as it existed immediately prior to the decision in the case of Pruett v. City of Rosedale, 421 So.2d 1046, and by the statutory law governing sovereign immunity existing prior to July 1, 1985.
Laws, 1984, ch. 495, § 4, p. 642. This act is codified at Miss. Code Ann. § 11-46-1, et seq.[1] Jimpson was paroled January 9, 1985. The shooting, upon which the claims in this case are based, occurred on February 12, 1985. Therefore, the sovereign immunity assertions of the Parole Board and the Mississippi Department of Corrections are controlled by pre-Pruett case law and statutory law in effect prior to July 1, 1985.
Pre-Pruett case law immunized the state and its subdivisions and agencies from suit unless otherwise directed by statute, and where such a statute exists it is the measure of the power to sue such board or agency. Jagnandan v. Mississippi State University, 373 So.2d 252, 253 (Miss. 1979); Horne v. State Building Comm'n., 233 Miss. 810, 103 So.2d 373, 380 (1958); Smith v. Doehler Metal Furniture, 195 Miss. 538, 15 So.2d 421 (1943); and Mississippi Centennial Exposition Co. v. Luderbach, 123 Miss. 828, 86 So. 517, 519 (1920). The Parole Board and the Department of Corrections are state agencies. They are creatures of law charged to perform state functions. *223 As such, each is immune from suit for a January/February 1985 tort arising from performance of governmental functions such as those here charged, except as may be allowed by statute.
The statutes creating and governing the Parole Board and probation and parole decisions are found at Miss. Code Ann. § 47-7-1, et seq. Provisions concerning immunity or waiver of that immunity are not, nor were they prior to July 1, 1985, contained anywhere in those statutes. The Parole Board is, therefore, immune from this suit.[2]
The statutes creating and governing the Mississippi Department of Corrections are found at Miss. Code Ann. § 47-5-1, et seq. Section 47-5-75 presently provides, and prior to July 1, 1985, did provide, that if the Board of Corrections, in its discretion, chooses to procure liability insurance, the Board, the Commissioner and regular employees of the correctional system may be sued up to the insurance limits. Grantham did not allege in her Amended Complaint or at any time raise the possibility that the Board had, in fact, acquired any such liability insurance.
The Department of Corrections is under the policy direction of the Board of Corrections (Miss. Code Ann. § 47-5-8(1) [Supp. 1987]). Quite arguably, the insurance provisions and concomitant partial waiver of immunity found in Section 47-5-75 apply to the Department of Corrections. All of this is irrelevant, however, unless the Department of Corrections had some duty to the public and to Grantham, concerning Jimpson's parole, which it failed to perform.
Grantham's Amended Complaint alleges generally that in regard to Jimpson's parole and release, all defendants acted arbitrarily, negligently and with reckless disregard for the safety of society in general, and of Grantham in particular. Grantham charges that the Department of Corrections, specifically, negligently or intentionally failed to provide the Parole Board with information which, she says, the Parole Board should have considered before releasing Jimpson.
Section 47-5-10 sets out the general powers and duties of the Department of Corrections. No duty to provide the Parole Board with information may be found. Furthermore, Section 47-7-5 vests in the Parole Board exclusive authority and responsibility for the granting of paroles and for revocation of the same. The Department of Corrections could have no duty in the premises because the Department has no control over parole decisions and is not statutorily required to provide information to the Board.
The judgment of the Circuit Court dismissing the complaint against the Parole Board and the Department of Corrections is affirmed.

V.

Commissioner Thigpen and Members of the Parole Board
Law, like man's other inventions intended to make our society better, is infected with contradiction and ambiguity, as all judges are painfully aware. Legitimate interests cry for vindication such that none could deny except that equally worthy interests are trampled in the process. The last thing our poorly paid and heavily burdened correctional and parole officials need is more lawsuits. Yet the system they administer will inevitably produce great injury.
Judge Learned Hand once agonized over the tensions inherent in judicial resolution of such contradictory forces.
It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he *224 may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. Judged as res nova, we should not hesitate to follow the path laid down in the books.
Gregorie v. Biddle, 177 F.2d 579, 581 (2d Cir.1949).
The last two decades have seen considerable litigation regarding our prison officials' immunity vel non when faced with civil actions and claims of damage caused by acts or omissions within the performance of their official responsibilities. Bogard v. Cook, 586 F.2d 399, 412-15 (5th Cir.1978) correctly saw that Mississippi law afforded such officials a qualified immunity to suit.
We addressed the subject in Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982), wherein this Court stated:
... It is our opinion that abolishment of sovereign immunity does not apply to legislative, judicial and executive acts by individuals acting in their official capacity, or to similar situations of individuals acting in similar capacities in local governments, either county or municipal.
Pruett, 421 So.2d at 1052. Pruett, therefore, left intact the immunity granted to the legislature, judiciary and executive office and to "those public officers who are vested with discretionary authority." Pruett, 421 So.2d at 1052.
The matter of qualified official immunity was before the Court in Poyner v. Gilmore, 171 Miss. 859, 158 So. 922 (1935). In distinguishing between ministerial duties, which the officer neglects at his peril, and qualifiedly protected discretionary public functions, the Poyner Court stated:
"`The most important criterion, perhaps, is that (if) the duty is one which has been positively imposed by law and its performance required at a time and in a manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion,' the act and discharge thereof is ministerial."
Poyner, 171 Miss. at 865, 158 So. at 923. See also Hudson v. Rausa, 462 So.2d 689, 694 (Miss. 1984).
Davis v. Little, 362 So.2d 642 (Miss. 1978), was a tort action in which plaintiff charged a supervisor with negligence while driving a county owned pickup truck. Davis further explained the underlying rationale of qualified public official immunity.
The immunity of public officials, on the other hand, is a more limited principle, since its purpose is not directly to protect the sovereign, but rather to do so only collaterally, by protecting the public official in the performance of his governmental function. Given the more limited function, courts have generally extended less than absolute immunity. The most commonly recognized limitation is the distinction between discretionary acts as opposed to ministerial acts. Under this distinction the official is immune only where that which he does in the performance of his lawful duties requires "personal *225 deliberation, decision and judgment." See Prosser, Law of Torts, § 132 (4th ed. 1971).
Davis, 362 So.2d at 643; see also Hudson, 462 So.2d at 694-95.
Hudson summed the matter up.
The public officials of this state, elected or appointed, enjoy a qualified immunity to a civil action for damages when acting in the performance of official functions discretionary in nature. They lose that immunity only when they substantially exceed their authority and commit wrongs under color of office. They have no immunity where they commit wilful wrongs or malicious acts. [citations omitted]
Hudson, 462 So.2d at 696.
Our law thus directs that a governmental official has no immunity to a civil action for damages if his breach of a legal duty causes injury and (1) that duty is ministerial in nature, or (2) that duty involves the use of discretion and the governmental actor greatly or substantially exceeds his authority and in the course thereof causes harm, or (3) the governmental actor commits an intentional tort. Beyond that, a government official has no immunity when sued upon a tort that has nothing to do with his official position or decision-making function and has been committed outside the course and scope of his office.

A. Commissioner Thigpen
The Commissioner of Corrections is vested with substantial discretionary authority. Cf. Morgan v. Cook, 236 So.2d 749, 750 (Miss. 1970) (referring to superintendent under former administration structure); Bogard v. Cook, 586 F.2d 399, 412-13 (Miss. 1978) (same). The Commissioner has no authority, however, to grant or deny parole, nor does our law impose upon him any duty to recommend for or against parole.
The only duty imposed on the Commissioner of Corrections, as Commissioner of Corrections, relative to parole matters is a general one found in Miss. Code Ann. § 47-5-28(d) (Supp. 1987). That section provides that the Commissioner has the duty, "upon request, [to] provide the Parole Board with adequate staff and support resources necessary to conducting Parole Board business under the guidance of the administrative assistant for parole matters." Readily we see that this has nothing to do with Grantham's complaint.
Grantham argues that Miss. Code Ann. § 47-7-19 (Supp. 1987) imposes a duty on the commissioner to furnish information to the Parole Board. Section 47-7-19 provides:
It shall be the duty of all correctional system officials ... to furnish to the board such reports as the board shall require concerning the conduct and character of any offender in the department of corrections' custody and any other facts deemed by the board pertinent in determining whether such offender shall be paroled.
If this be all, Grantham's complaint doesn't even come close to stating a claim against former Commissioner Thigpen. Her only allegation is that he failed to provide information, any duty to furnish which is negated by her subsequent allegation that the Parole Board never requested any information or report regarding Jimpson. The notion that there might be some legally sufficient causal connection between Commissioner Thigpen's failure, if any, to provide information and Grantham's injuries seems tenuous at best.
In the end, we do not regard Section 47-7-19 as imposing upon the Commissioner a discretion-free informational duty. The statute seems directory, not mandatory. Affording Grantham's complaint the elasticity required in the present procedural context, we find nothing to suggest that she might be able to prove that former Commissioner Thigpen committed any intentional tort or acted substantially at variance with his authority. The Circuit Court's judgment dismissing Grantham's claim against Thigpen is affirmed.

B. Parole Board Members Ruth, Sykes, Kaelin, Figgs and Carter
The complaint against the five parole board members sued personally in their individual and official capacities presents another matter, for these are the people who in law and in fact set Jimpson free.
*226 The decisions whether one in custody should be granted parole is attended with broad discretion, Miss. Code Ann. § 47-7-17 (1972), as parole is more a matter of grace than of right. Williams v. State, 445 So.2d 798, 813 (Miss. 1984); Davis v. State, 429 So.2d 262, 263 (Miss. 1983). Indeed, exercise of that discretionary authority is one of the toughest judgment calls any state official may be called upon to make. On the one hand, the offer and somewhat regular grant of parole is an essential ingredient of any rational correctional policy. On the other hand, experience teaches that not even the most careful screening may eliminate all recidivism. In the best run system there will be some parolees who will commit new offenses while on parole.
Our task today is narrow and procedural. Looking to the amended complaint we find that Grantham has charged that the members of the Parole Board paroled Jimpson "with reckless disregard" for her safety. She charges that, prior to their parole decision, these board members did not review "all pertinent information," "the circumstances of Jimpson's offense [murder in the course of a robbery]," nor "his previous social history and criminal record."
Continuing, Grantham's amended complaint charges that these Defendants failed to consider the
twenty-two (22) years Jimpson had spent in prison; the five (5) armed robbery charges and a murder dropped after his conviction in December of 1972; and his previous escape from the State Penitentiary at Parchman... . The Defendants failed to inquire about Jimpson's conduct, employment and attitude while in the custody of the Department, and they failed to ascertain whether or not any physical or mental examinations had been made.
These actions, Grantham charges, were substantial departures from the duties imposed upon the members of the Parole Board by Section 47-7-17.
There are other charges alluded to at the outset, but which need not be here detailed. What is said above is enough. Grantham has charged that Defendants Ruth, Sykes, Kaelin, Figgs and Carter have been guilty of gross neglect of their duties under Section 47-7-17. Though we reject the notion that those duties be classed ministerial, Grantham's amended complaint seems sufficient to pierce the shield of these officials' qualified immunity to suit as outlined above. We certainly may not say with confidence that she can, consistent with her allegations, prove no set of facts which would entitle her to relief.
The judgment of the Circuit Court dismissing Grantham's amended complaint against Defendants Ruth, Sykes, Kaelin, Figgs and Carter is reversed and this case is remanded to the Circuit Court for further proceedings consistent with this opinion, as though the motion to dismiss had been denied. Breland v. Smith-Johnson, Inc., 501 So.2d 389, 393 (Miss. 1987); Whitten v. Commercial Dispatch Publishing Company, Inc., 487 So.2d 843, 846 (Miss. 1986); McCain v. Northwestern National Insurance Co., 484 So.2d 1001, 1002 (Miss. 1986).
We intend that not the slightest hint be perceived how this case ought ultimately be decided. Certainly, we in no way intimate that Grantham ought recover, or, for that matter that her claim ought survive summary judgment. Suffice to say that many obstacles loom large before her, not the least of which is causation. See Martinez v. California, 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481, 489 (1980). What  and all  we hold this day is that Grantham's amended complaint has, as to these five Defendants, stated a claim upon which relief may be granted.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
DAN M. LEE, P.J., concurs in part and dissents in part.
NOTES
[1] The legislature has yearly reenacted the statute governing the claims to which the waiver would apply. See Miss. Code Ann. § 11-46-6 (Supp. 1987). Section 11-46-6 presently provides that the waiver shall apply only to claims arising after July 1, 1988, as to the state, and on or after October 1, 1988, as to political subdivisions.
[2] The Circuit Court erroneously decided the Parole Board's immunity on the basis of governmental entity immunity for discretionary functions provided for in Section 11-46-9(c). That statute, however, is effective only against claims arising after the time at which the claim in this case arose. Furthermore, the discretionary/ministerial dichotomy relates to suits against officials, not the agencies or departments they serve.