BOARD OF SUP'RS OF LEE COUNTY *et al. v.* PAYNE.

(Division A. Feb. 17, 1936.)

[166 So. 332. No. 32064.]

Mitchell & Clayton, of Tupelo, for appellants.

**C. P. & S. H. Long,** of Tupelo, for appellee.

**McGowen, J.,** delivered the opinion of the court.

W. C. Payne, appellee, filed his bill in the chancery court against the board of supervisors of Lee county, appellant, and J. D. Christian, in which he sought to recover three hundred fifty-nine dollars and forty-three cents on account of an alleged breach of a contract entered into between the board of supervisors and Christian and himself. The appellant, the board of supervisors, filed a demurrer to the bill, which was overruled; and an appeal to this court was granted by the chancellor to settle all the controlling principles of the case.

The bill alleged that in December, 1931, the board gave notice of its intention to award contracts to the lowest responsible bidders who would furnish bridge lumber for the bridges for the county for the year of 1932, which notice was duly published; that pursuant to such notice the appellee and J. D. Christian submitted their bid to the board, in which they offered to furnish lumber for the building and repairing of the bridges in the county for the ensuing year at certain prices per thousand for heart pine, red oak, and white oak; that their bid was accepted by the said board, and an order was duly entered on the minutes of said board to that effect, and pursuant thereto the contract was entered into and signed by the president of the board and clerk thereof, and by Payne and Christian; and that on the same day they entered into bond as fixed by the board, which was duly approved by it for the faithful performance of their contract.

It was further alleged that it was the duty of the board to buy from Payne and Christian, during the year 1932, all of the bridge lumber that was necessary to be used in said county at the prices named in the contract, except that under and by virtue of terms of the contract it was provided that the board of supervisors of each district should have the right to·purchase from any of the local mills located in said district, lumber, provided it bought the same at the prices set out in the aforesaid contract.

The bill further alleged that appellee and Christian, after the making of said contract, did procure sufficient timber out of which to manufacture and have on hand lumber of the various kinds and descriptions, named in the contract, that might be necessary and needed from time to time during the year of 1932, for the purpose of building and repairing the bridges of the said county, and that they were at all times during the said year, from the 6th day of January, 1932, until the end of said year, able, ready and willing to carry out said contract and furnish the lumber as needed; but notwithstanding the making and entering into of said contract, and notwithstanding the fact that the said board was under contract to purchase all of the lumber needed for bridge building and repairing for said county for said period of time, except such as might be bought from mills lying and being situated in the district of each supervisor, it totally ignored its duty to so purchase said lumber from the said Payne and Christian, and bought a large amount of lumber from other people who had no mill located in the district of the supervisors purchasing the same, and in many cases from persons having no mill located in the county of Lee.

There was then set forth an itemized statement of the amount of lumber purchased by the said board in each of the several districts of the county, for bridge purposes

during said year, totaling one hundred seventy-five thousand three hundred eight feet.

It was further charged that appellee's damages by reason of the breach of the said contract was four dollars per thousand feet, at a low calculation, and that Christian and he, because of the breach of contract by the board of supervisors, suffered a loss of seven hundred eighteen dollars and eighty-seven cents.

It was also alleged that the said board and the said J. D. Christian, through some kind of understanding unknown to appellee Payne, reached an agreement by which the said Christian agreed to waive and not claim his part of said loss so sustained; and that Christian would not join in the bill with appellee Payne.

The bill further alleged that the claim, as itemized in the exhibit attached to the bill, had been duly presented theretofore to the board of supervisors, and by it rejected: and prayed for a decree in appellee's favor for one-half of the total sum against the board of supervisors.

All the orders, including the notice to bidders, the bid, the contract, and the bond, were alleged to have been strictly in accordance with the law, and made exhibits to the bill.

The demurrer to the bill raised the question that there was no equity on the face of the bill, because there was no statutory liability against the county, and that the suit was unauthorized.

The question for decision on this appeal is thus stated by counsel for the appellee: "Therefore the sole question before the Supreme Court now is: Whether the Board of Supervisors, the only parties through whom a county can make a contract, can proceed strictly according to law in procuring a contract and entering into the same and then afterwards wilfully and intentionally fail to carry it out and perform the same on their part while the other parties to the contract are bound thereby and at

the same time create no liability on the part of the county to the other party to the contract?''

The advertisement for bids, the submission of the bid by Payne and Christian, and the making of the contract were had in accordance with section 6064, Code 1930. This section requires all boards of supervisors, board of school trustees of the common schools, and all boards of mayor and aldermen of municipalities to purchase their supplies for public works and for public buildings and for public constructions, upon competitive bids, letting contracts therefor for periods of not more than twelve months in advance; and forbids the purchase of any supplies to be made by an individual member of the board, with certain exceptions here unimportant. Section 6065, Code 1930, makes it a misdemeanor for any member of the state boards to violate the provisions thereof, and imposes a fine, or imprisonment, or both, upon the offender.

It will be noted that the bill does not allege that any lumber, or anything else of value, was actually furnished to the county. This suit is an effort on the part of the appellee to recover damages from the board of supervisors for a breach of the contract made in pursuance of the section mentioned above, no part of which contract had been performed in any manner by the defendant, or appellant here, in other words, the effort is to recover from the county unliquidated damages for the breach of a contract, no part of which had been performed.

Let it further be noted that there was no contract on the part of the county to purchase from the bidders, Payne and Christian, any specified amount of lumber; and their complaint is that they were damaged by reason of the board's breaching its contract and purchasing its supply of lumber from strangers.

Section 253, Code 1930, as amended by Laws 1932, c. 179, provides how a claim shall be presented to a board of supervisors for allowance; section 254, Code 1930,

provides for docketing of claims, and in the order of their presentation; section 255, Code 1930 (as amended by Laws 1932, c. 202), provides that all demands and accounts against the county shall be audited and allowed or rejected, and the order allowing such claims shall be entered on the minutes, specifying the name of the claimant, the amount allowed, the page and particular section of the law under which such allowance is made, and on what account. Section 257, Code 1930, prohibits the allowance of a claim against a county for any more than the amount actually due thereon, dollar for dollar, according to the legal or cash compensation for such services rendered, or material furnished. Section 270, Code 1930, provides that any county may sue, and be sued by its name.

This court has held that counties are immune from liability to the same extent that the state is. City of Grenada v. Grenada County, 115 Miss. 831, 76 So. 682. The county is not liable for the unauthorized acts of the board of supervisors. Harrison County v. Marione, 110 Miss. 592, 70 So. 702; 15 C. J., sections 272 and 274, pp. 568-571. In the case of Sutton v. Board of Police, 41 Miss. 236, this court held that the board of police was not liable for the tortious acts of their agents where their duties are prescribed by law, with penalties for nonperformance.

In the case of Brabham v. Board of Supervisors of Hinds County, 54 Miss. 363, 28 Am. Rep. 352, this court held that the county is not liable for damages suffered in consequence of neglect to repair a county bridge, and said: "At common law, a county could not be so held liable. No statute makes it liable. The 'demands,' 'accounts' and 'claims' contemplated in the statutes to be audited and allowed by boards of supervisors, and authorized to be sued on, if allowance is refused by the board, are manifestly such liabilities of the county as are provided for by some statute. A county can have

no liability except as authorized, expressly or by necessary implication, by some statute. Counties are political divisions of the State, created for convenience. They are not corporations with the right to sue and be sued as an incident to their being, but are quasi corporations, invested by statutes with certain powers, and subject to certain liabilities, and can neither sue nor be sued, except as authorized by statute. The right to maintain a suit like this against a county is not only outside of the contemplation of the statutes, but is opposed by every consideration of sound policy.'' This rule has been approved in State v. Vaughn, 77 Miss. 681, 684, 27 So. 999; Rainey v. Hinds County, 79 Miss. 238, 241, 30 So. 636; Redditt v. Wall (Miss.), 55 So. 45, 34 L. R. A. (N. S.) 152; Pidgeon Thomas Iron Co. v. Leflore County, 135 Miss. 155, 99 So. 677. In Rainey v. Hinds County, supra, unliquidated damages were assessed against the county which accrued in its construction of a causeway by which plaintiff's land was damaged. But that case has no application here, for the reason that section 17 of the Constitution of 1890 was invoked.

The case that seems to settle the principle invoked by the appellant, and properly apply to the case at bar, is Mississippi Centennial Exposition Co. v. Luderbach, 123 Miss. 828, 86 So. 517, in which the court held that ''Suits against the state and its governmental agencies cannot be maintained unless authorized by an act of the Legislature, and chapter 241, Laws of 1918, does not authorize a suit against the Mississippi Centennial Exposition Company for a breach of contract. A suit can only be instituted under that act for material contracted for by, or furnished to, such company. It does not authorize suits for any other class of demands.'' In that case the Legislature expressly declared, by the named act, that the Mississippi Centennial Exposition Company shall be subject to suit, by any person, firm, or corporation now having an existing cause of action a-

gainst said company for material contracted for by, or furnished to, said company. No right to sue there was implied.

The only statute which the plaintiff may invoke here is section 6064 which does not expressly, or by necessary implication, confer the right of suit against a county for unliquidated damages for a breach of an unperformed contract. It is conceded that there is no statute conferring a right of action against the county in the case at bar; but it is insisted, by necessary implication, that there is an implied right of action created by that statute. We do not agree with this view. The case of Mississippi Centennial Exposition Co. v. Luderbach, supra, is a stronger case for a plaintiff than is to be found in the statute and the facts alleged in this bill. The strongest statement that we have found in our research for appellee's contention is that in 7 Am. & Eng. Ency. of Law, p. 942: ''Counties are held to the same liabilities on their legal engagements as individuals.'' Five cases are cited in the note thereto as sustaining this case, but none of them, in the remotest degree, upholds the asserted right to bring a suit for unliquidated damages against a county for its willful and unauthorized breach of duty in the violation of its contract.

We refer now to another statement, apparently lending some comfort to the appellee, found in 15 C. J., sec. 255, p. 559, which states: ''One who has entered into a contract with a county is entitled, in a proper case, to sue the county for breach of contract.'' As sustaining this announcement, three cases are cited which do not hold that a suit for unliquidated damages caused by a breach of a contract wholly unperformed by the plaintiff, is a ground of action against the county.

The suit here involves an action for unliquidated damages for the unauthorized and willful violation of a duty which the county owed to the plaintiff, the appellee here, and we are of the opinion that no such action by the state

is granted to its auxiliary creature, the county, and that from the existing statutes such right cannot of necessity be implied. The county was not bound by this contract to buy a single foot of timber from these plaintiffs. The wrong alleged is that the county bought lumber from other parties which should have been purchased from them. The county could not in the allowance of this claim say it had received dollar-for-dollar compensation in material from this plaintiff if its board of supervisors had undertaken to allow this claim.

It is argued that counties and municipalities are upon the same plane, and should be held alike liable for a breach of a contract. The courts have universally made a distinction between counties and other municipal corporations, such as cities, towns, and villages. "The principal ground upon which counties are not held liable for damages in actions for their neglect of public duty is that they are involuntary political divisions of the state, created for governmental purposes, and are organized without regard to the consent or dissent of the inhabitants. The theory upon which municipal corporations proper are held liable in such cases is that they are voluntary associations created and organized at the solicitation of, and with the free consent of, the inhabitants, under the laws of the state, and that the benefits accruing to the people by such incorporation compensate them for the liability. Another reason is that since the county is but a political subdivision of the state, a suit against the county is, in effect, a suit against the state, and that therefore an action will not lie without the consent of the legislature. But some courts allow a recovery where a constitutional right is invaded, as where it can be construed to be a taking of private property without compensation." See 7 R. C. L. pp. 955, 956, sec. 29.

We have reached the conclusion that the statute does not expressly, or by necessary implication, confer upon the plaintiff a right of action for damages for the breach

of·a contract where no part of same is performed, and where the only recovery can be had is in the nature of damages against the county for failure, by the governing board, in the performance of its duty.

· The demurrer interposed by the county should have been sustained.

Reversed and remanded.