WUNDERLICH *v.* STATE HIGHWAY COMMISSION.

(In Banc. Nov. 14, 1938.)

[184 So. 456. No. 33248.]

Creekmore, Creekmore & Capers, of Jackson, for appellant.

430

434

**E. R. Holmes, Jr.,** Assistant Attorney-General, for appellee.

438

Argued orally by **Wade Creekmore**, for appellant, and by **E. R. Holmes, Jr.**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

On November 6, 1933, appellant, a highway construction contractor, entered into a detailed contract with

appellee, the State Highway Commission, to construct a link in a primary state highway in Harrison and Stone Counties, the contract providing that the work should be promptly entered upon by the contractor and within 10 days, and should be completed within 200 working days, after the issuance by the Commission of the work order.

Among the stipulations of the contract was the obligation on the part of the Highway Commission to procure and furnish all necessary rights of way for use in constructing the roadway and its structures and appurtenances. No question has been raised as to the validity of the contract or as to its obligatory effect in all its parts.

On November 7, 1933, the Commission issued its work order, and within the time aforesaid the contractor entered upon, and thence diligently prosecuted, the actual performance of the work; but as to certain portions of the link to be covered in the performance of the contract, the Commission failed to furnish the rights of way, so that the contractor could not go forward with that part of the work. These rights of way were not in fact furnished until April 13, 1934, or not until 105 days of the stipulated 200 working days had elapsed.

The progress made by the contractor on that portion of the link to which the right of way was promptly furnished, taken together with the actual progress made and the days necessary for completion of the whole project after the delayed rights of way were obtained, showed that had all the rights of way been furnished within a reasonably prompt time, the entire work in all its parts would have been completed and ready for final acceptance not later than August 18, 1934; but solely because of the said failure of the Commission, the work was not completed until December 11, 1934.

The contract provided that for all times after entering upon the work and until it had been entirely completed in all its parts and ready for acceptance, and for

an additional period of 30 days thereafter, the contractor shall maintain the work in first-class condition at his own cost and expense, and that the cost shall include the engineering expense of the Commission in superintending the said maintenance. The work was not accepted by the Commission as finally completed and the contractor was not released from maintenance until January 11, 1935, when as aforesaid, this release should and would have been as of date September 18, 1934, had the Commission complied with its obligation to furnish the right of way with reasonable promptitude.

The suit is by the contractor to recover the expenses paid out by him in the maintenance of the work from September 18, 1934, to January 11, 1935, proximately caused by the said breach of the contract by the Commission, amounting to $11,639.53, including engineering expenses of $973.41, which latter item was charged to the contractor and deducted from his final estimate, as will be hereafter mentioned. These maintenance expenses are all itemized and disclosed by exhibits filed with the bill. We do not pursue the details of the bill further than to add that it states a good cause of action.

I. To the bill the Commission interposed a plea of accord and satisfaction, and by agreement of the parties this plea was separately heard in advance. The plea was sustained by the court. This plea is to the effect that upon the final acceptance of the work by the Commission, it made a full and final payment to the contractor for said work, under what it has termed its "Final Estimate," upon which final estimate the state treasurer's check was delivered to the contractor for the full amount of that estimate, which check was accepted, and indorsed by the contractor, and the proceeds thereof were obtained and retained by him.

The check which was delivered to the contractor contains no recital that it is in full or final payment; but the Commission takes resort to the requisition for the check made upon the State Auditor. This requisition

cites that the amount therein specified is "full settlement of claims and accounts listed herein which' have been approved by the Mississippi Highway Commission," and accompanying the requisition is what is denominated a "Final Estimate," which estimate is drawn out into a complete itemized statement of what the requisition is for, of which items not a single one covers, or has reference in any way to, the items for which this suit is brought, save only the item of engineering expenses.

The authorities seem agreed everywhere that, when a remittance is sent or deliverd in full of an annexed or enclosed itemized statement of account, or in full of enclosed or annexed invoices, or in full of any particularly itemized or otherwise particularly designated claim or demand, the accord and satisfaction extends only to the particular or particularized account, statement, invoice or demand so pointed to or designated, and not to any other item, or claim or liability, although growing out of the same matter or transaction. Many cases to this effect are cited, 1 C. J. S. Accord and Satisfaction, pages 533, 534, section 34; and the rule, in substance, is supported in Enochs v. Delta Cotton Oil Co., 139 Miss. 234, 104 So. 92. The effect of an accord and satisfaction cannot be extended by mere inference, as is sought to be done here; wherefore the said plea should have been denied.

II. The second and far more important question is whether the State Highway Commission is liable to suit upon items in the nature of those involved in appellant's demand; in other words and more specifically, whether the Commission is liable to suit by the contractor for the breach of a specific provision of a definite and particular road construction contract, the breach and its proximate consequences having occurred during and directly in and about the actual work of the performance of the contract.

There is invoked for the Commission the familiar doc-

trine that the state and its subdivisions and agencies are not liable to suit in the courts unless thereunto authorized by statute. To that rule we propose to make no exception in this case, as the rule actually already exists, when carefully examined and properly understood; we do not propose to extend or limit it by construction, save as it has already been established in reason and by the best considered cases.

The statutes dealing with the powers, duties and functions of the State Highway Commission distinctly authorize the Commission "to construct, reconstruct, and maintain, at the cost and expense of the state all primary highways," Code 1930, section 4999, and the Commission is furnished with a large fund, previously appropriated and set aside to it and under its control, without the necessity of any specific subsequent appropriation to cover any particular or specific road contract. The Commission is given full and exclusive power to determine the detailed location, the plans and specifications and the type or kinds of material to be used, and to make contracts to cover in full and in every detail all state road construction projects, and to supervise the execution of those contracts. And the Commission is proclaimed by the statute, in broad and general terms, as a "body corporate, and as such may sue and be sued, plead and be impleaded, in any court of justice having jurisdiction of the subject matter of any such suit." Code 1930, section 5006.

The Commission admits, as it must admit, that under these statutes, Code 1930, section 5006, the Commission is subject to suit by a contractor for any failure by the Commission to pay the contractor for any labor done or material furnished by the contractor under and in accordance with the terms of his contract with the Commission for road construction work at the sums or prices specifically stipulated in the contract; but the Commission contends that beyond that precise and narrow limitation, no suit can be maintained against it by the con-

tractor, although further sums are due to the contractor as the proximate result of a breach of the contract by the Commission, and although the breach occurred during and directly in and about the actual work of the performance of the contract. The commission admits that it may be sued for its breach of the contract if it failed to respond to its obligation by payment under some of the provisions of the contract, but denies liability to suit for its failure to respond as to breaches by it of other material parts of the contract, although occurring during the course of the same piece of work. To this contention, as thus stated, we cannot give our assent as being a correct interpretation of the law.

It is all very well that the state and its subdivisions and agencies shall not be held as within that wide field of legal liability in contract and in tort which embraces the manifold activities of private persons and corporations. Such a liability would unbearably tax the supervisory powers of any superior official personnel within the reasonable reach of the taxpayers to maintain. It is all very well, therefore, that the doctrine of respondeat superior shall not apply to the state for tortious wrongs committed by any officer or agent of the state although at the time acting in behalf of the state, and that in such cases the sufferer shall be remitted to his remedy against the individual tort feasor. And likewise as to its contracts of a general nature made for the general public or for a group of the public as the beneficiaries, when the attempted suit is by one of that public,—and as to all situations within like reason.

But these considerations can have no just application to a construction contract made with an individual contractor, for the construction or reconstruction of a particular building, or levee or canal, or road, and when the details,—the work to be performed, the materials to be furnished, the manner of performance, and all the mutual obligations of the parties thereinabout,—are set out in the contract, and the contractor, at the express di-

rection of the authorized agency, has actually entered upon the particular work embraced in the contract. There the required supervision during performance, the necessary watchfulness over it, is focused into a narrow and strictly localized situation wherein the difficulty of strict performance by the state of its contract obligations made with the particular contractor for that particular work and in the course thereof is no greater, nor harder faithfully to comply with, and the consequence of a breach is no harder to foresee than had the contract been between private persons. No public policy there intervenes to excuse the state from its contract obligations and for the proximate consequences of its breach thereof; and so we hold that, in such a case, the state is as if a private contracting party, with the same rules of liability to be applied; and when, as here, the state creates an agency for the construction of buildings, or roads or the like, and gives to that agency the dignity of a body corporate; authorizes it to make the particular construction contracts, such as here in question; empowers it to supervise the execution thereof and to pay for the same out of funds supplied into the hands of said agency, and finally allows it, in broad and general terms, to sue and be sued, then that agency must stand in a suit by the contractor in all matters respecting the performance of its contract, and as to breaches of it during the course of such performance as if the agency were a private party, and in accordance with the general law of contracts, whereunder any compensatory damages to the contractor for a breach of the contract by the other party becomes a part of the cost of the services rendered under that contract.

A case strikingly similar to the case here before us, both upon the facts and in points of law, is State v. Feigle (Ind. App.) 162 N. E. 55, affirmed 204 Ind. 438, 178 N. E. 435. We are in accord with the holdings in that case. See, also, People v. Sohmer, Comptroller, 207 N.

Y. 450, 101 N. E. 164; and the authorities cited in those cases. In the latter case, the court said:

"The sovereign can contract and has very many occasions to do so; it can build canals and public buildings and engage in public works and, in carrying forward its projects it makes use of the instrumentalities which individuals use for the same purposes. It must be governed by the same rules of common honesty and justice which bind individuals. It is for its interest that its contract should be binding upon all the parties thereto. If it can at pleasure violate its contracts, in the absence of any stipulation authorizing it to do so, there will be such uncertainty and risk attending all its contracts that it will go into the market for work and materials at a great disadvantage. As was well said by Judge Allen in People v. Stephens, 71 N. Y. [527] 549: 'There is not one law for the sovereign and another for the subject, but when the sovereign engages in business and the conduct of business enterprises, and contracts with individuals, whenever the contract in any form comes before the courts the rights and obligation of the contracting parties must be adjusted upon the same principles as if both contracting parties were private persons. Both stand upon equality before the law, and the sovereign is merged in the dealer, contractor, and suitor.' "

Appellee has relied chiefly on two cases, Board of Sup'rs of Lee County v. Payne, 175 Miss. 12, 166 So. 332, and Mississippi Centennial Exposition Co. v. Luderbach, 123 Miss. 828, 86 So. 517. In the opening paragraph of the second division of the present opinion and in stating the question now before us, the Payne Case was sufficiently differentiated; for in that case the court was careful to point out more than once during the course of the opinion that there no part of the contract was performed or was in the course of performance by the contractor when the breach is charged to have occurred, and we have herein discussed the pertinency of that distinguish-

ing feature. The Luderbach Case was decided under a special statute, Laws 1918, c. 241, enacted under exceptional circumstances, and was precisely limited in its terms to suits "for material contracted for by, or furnished to said [Exposition] company." The statute was rather strictly construed and was held not to include a part of the material to be used in the performance of the contract, when the only contract was for a completed installation. The special statute did not, in general terms, authorize the Exposition Company to be sued, but limited the right to specified matters of which a breach of contract was not one. That case, when closely examined, furnishes no substantial aid one way or another on the issue now before us.

We must note finally that the bill also includes claims alleged to have arisen out of road contracts on three other projects. Inasmuch as what has been above said in regard to the Harrison-Stone contract will furnish a guide as to the others, we do not discuss the latter beyond this mention of them.

Reversed and remanded.

**Ethridge, J.,** delivered an opinion, dissenting in part.

I am unable to agree with the proposition that the Highway Commission is liable for any damages for breach of contract. The appellant must resort to coercive measures, such as mandamus. I will state my position more fully.

Martin Wunderlich, complainant in the court below, filed a bill in the Chancery Court against the State Highway Commission, seeking to recover certain deductions made by the Highway Commission for engineering and maintenance, charged under its contract for supervision of the work beyond the stipulated time for its completion under the contract, and for damages for failure of the Highway Commission to secure certain rights of way which it had agreed to obtain, under its contract.

There were four separate contracts involved in the suit. Under the contract with the Highway Commission, the engineers selected and employed by it were made the judges of the extent to which the work had been completed under the contract, at the various intervals in the construction of the highway, when percentages of the payments were to be made as the work progressed, and judges as to whether the work complied with the specifications in the contract.

It was averred that on the 7th day of November, 1933, the defendant, the Highway Commission, directed the work to proceed under the contract, although the right of way for a bridge included in the contract had not then been secured; that under the special provisions of the contract the time for the work should be divided into four equal parts, the progress of the work on the roadway to be such that at the end of the first period at least fifteen per cent of the work should be completed; at the end of the second period at least forty per cent; at the end of the third period seventy-five per cent. That the progress of the work on the bridges should be such that at the end of the first period at least ten per cent should be completed, at the end of the second period thirty-five per cent, at the end of the third period seventy-five per cent; and at the end of the fourth period all the work should be completed. One of the provisions of the contract on the first project was as follows: ''Right of Way. The entire area of land reserved for and secured to the use of the traveling public and which is provided for and secured by the department for use in constructing the roadway and its structures and appurtenances.''

It was alleged that one of the bridges to be constructed was a large concrete bridge, and the right of way for this concrete bridge was not made available to the complainant's sub-contractor until the 13th of April, 1934, at which time fifty-three per cent of the contract time, or 105 days of the 200 working days had elapsed, at which time, entirely due to the defendant's failure to se-

cure the right of way, the sub-contractor had only been able to complete four per cent of the bridge work, consisting of work on a creosoted bridge for which the right of way was available prior to April 13, 1934; but the right of way for a large concrete bridge, and another small one, was not available until the date just mentioned. That under the work order issued, the contractor was required to begin the work, and did promptly begin the grading work, and according to periodical estimates of defendant on said date, April 13, 1934, the grading was sixty-five per cent complete, and only fifty-three per cent of the contract time had elapsed, while only four per cent of the bridge work was then complete, due to the failure to secure the right of way. That on August 18, 1934, the grading was ninety-eight per cent complete, but the bridge work was only fifty per cent complete, while eighty-five per cent of the contract time, or 170 working days had elapsed. That on September 25th the grading was ninety-nine per cent complete, and the bridge work only seventy per cent complete, while ninety-eight per cent of the contract time, or 197½ days thereof had elapsed. That on October 25, 1934, ninety-nine per cent of the grading was complete, and ninety-five per cent of the bridge work, while one hundred and ten per cent of the contract time, or 220 working days, had elapsed. That on December 11th 100 per cent of the grading and one hundred per cent of the bridge work was complete, while one hundred, and twenty-five per cent of the contract time, or 250 working days, had elapsed. These estimates are in accordance with the figures of the defendant. On January 11, 1935, the work done under the contract was finally accepted.

It is further averred that on August 18, 1934, according to the estimates of the State Highway Commission, the grading was ninety-eight per cent complete; but that in fact the grading was one hundred per cent complete, except for some fills at bridge ends which could not be done until the bridges were built; but that under the

rules and regulations of the defendant no work is estimated as one hundred per cent complete until the contract is entirely completed. That on the said date the contract time of 200 days had not expired, so that in equity and law the complainant should have been allowed to begin the maintenance period on the grading work of thirty days from said August 18, 1934; but due to the fact that the bridge work was not completed, defendant wrongfully required complainant to maintain the road and grading until thirty days after the final completion of the bridge work, or until January 11, 1935. This in spite of the fact that the failure to complete the bridge work was entirely due to the failure of the defendant to furnish the right of way therefor, as it was required to do by the specifications; that the bridge work was actually completed in about one hundred and thirty working days, or sixty-five per cent of the contract time, so that had there been no delay in furnishing the right of way, the bridge work could have been completed by the 1st of August, 1934.

The complainant further averred that because of the failure to furnish the right of way, as above stated, within a reasonable time after giving the work order, the defendant breached its contract with complainant, and hence is liable for all costs, expenses and damages resulting therefrom. And further averred that the total cost of maintaining the work exclusive of the thirty-day period from and after August 18, 1934, amounted to $7,736.50, this amount being made up of the expense of labor, compensation, insurance, public liability insurance, hire of teams, trucks, tractors, blades, gasoline and oil, freight and other miscellaneous expenses, shown in the statement attached to the bill of complaint. Additional expense was also incurred, because of delay in securing the right of way, in the construction of a temporary crossing around the bridge work at station 576-10, in order that the grading work might be completed,

and the grading outfit released for work elsewhere; all of which amounted to $135.

The complainant avers that due solely to the delay in securing the right of way, it was necessary to stockpile 3,000 cubic yards of excavation at the ends of bridges, so that the dirt might be back-filled against the structures when completed, entailing additional cost of .26 per cubic yard, or $780; this being necessary work, and a reasonable charge therefor. That due to the failure to furnish the right of way on time, the entire project was not completed within the contract period; but notwithstanding such failure on the part of the defendant, it has wrongfully made a deduction of $973.41, called engineering expenses, because the project was not completed in contract time, which, for the reasons already stated, the complainant is entitled to recover. Other items of expense to the complainant were set forth in a similar manner in the bill of complaint.

Complainant avers that on the 16th of March, 1934, the complainant and defendant entered into a written contract for work to be done on project number NRH-72-C, in Madison county, Mississippi, and that after execution of the contract the complainant began the work, which was to be completed by October 30, 1934; and the defendant, under and by virtue of section 8-7 of the specifications of 1927, wrongfully deducted the sum of $1,114; the said section providing that if any work shall remain uncompleted after the expiration of the contract time, there shall be deducted from the moneys due the contractor an amount equal to the cost of maintaining engineers and inspectors on the work. And alleged that this deduction was improperly made, because the delay was solely the fault of the defendant in failing to obtain part of the right of way in time to make it possible to complete the work within the time limit. Part of the right of way is alleged to have been within the city of Canton; and the right of way was not obtained and made available until August 18, 1934, twelve days before

the job was to have been completed under the contract; and that it was impossible to complete the work in that length of time, as heavy rains set in, necessitating maintenance of traffic over the highway at the complainant's expense.

The complainant also avers that he entered into a contract for project E 227-A, Chickasaw and Lee counties, a copy of the contract being made an exhibit to the bill; that after he entered upon the performance of the work under the said contract, the defendant improperly deducted the sum of $312, under and by virtue of section 8-7 of the specifications of 1927, as liquidated damages, or engineering expenses, for failure to complete the job within contract time. He alleges that this deduction was improper for the reason that it was the duty of the defendant to furnish the lengths of reenforced steel for culverts, so that the complainant could give these lengths to a manufacturer to fabricate the steel, and have it on hand for use in its manufactured state. The complainant requested the defendant to give him this necessary information, but this request was not complied with for approximately sixty days after the issuance of the work order by the defendant, causing a corresponding delay in the construction of the culverts, necessitating the moving of equipment back and forth, so increasing the expense to complainant in a considerable amount (setting out the nature of the damage, as contended for by the complainant). An itemized account, setting forth the various amounts sued for, was attached to the bill, as were the contracts, with the proper exhibits.

The defendant, the State Highway Commission, filed a plea, in which it said that it made a payment in full and final settlement of amounts due complainant on each of the projects and contracts sued on in this cause, setting forth the numbers, and the counties in which the contracts declared on exist; that said payments were made by State Treasury checks, on requisitions issued

to the State Auditor, and supported by itemized esti-
mates or accounts of the several total amounts due said
complainant; that said checks were accepted by him,
endorsed, and the proceeds thereof received by the com-
plainant; photostatic copies of all these Treasury checks,
with the State Highway requisitions, and itemized esti-
mates or accounts, bound together, being attached an
exhibit 1 to the plea, and made a part thereof, as though
fully set out therein in words and figures; and defend-
ant therefore says that it is not liable to the complain-
ant for the amounts claimed in its original bill, or in
any other sum or sums, etc.

The defendant moved for leave to file a special plea;
and if the said plea was overruled, that it might then
file pleas to the merits; which the court allowed, and
provided that its separate plea in bar might then be
filed before the filing of the answer, and order that the
cause might be heard on the original bill, plea in bar,
and oral and documentary proof on a day at the term
to be fixed by the court.

The trial proceeded upon the plea in bar, and testi-
mony was introduced to show that the contracts in ques-
tion were based on the engineers' estimates in the High-
way Department, making the deductions for engineer-
ing expense, etc., under the contract, which checks were
received by the complainant, with accompanying state-
ments of estimates and deductions made on account of
the engineering expenses, etc., and in some cases by the
voucher or order of the Highway Department to the
Auditor and Treasurer, showing the amount of receipt
in full of the demands embraced in the allowance and
estimates accompanying them. In some instances, with
some of the checks issued, the requisition of the High-
way Commission, containing the stipulation that it was
received in full of all demands, were sent to the com-
plainant; while in other cases checks were sent with ac-
companying statements showing estimates, etc., but the
check did not contain the statement that it was in full,

though the voucher to the Auditor did contain it. But the complainant knew the course of business,—that the vouchers were made up with the estimates, showing the amount of work done, the amount of deductions, expenses, etc., upon which the check was issued; all of which was known to the complainant, who accepted the checks, cashed them, and obtained the proceeds.

It was also shown in evidence that in some cases, after the final estimates had been made by the highway engineers, on application of the contractor a further estimate was made, and in some cases additional payments allowed after such estimates.

It does not appear that a request for additional estimates, or complaint of the incorrectness of the estimates, were made before the acceptance of the checks in payment for the work. The gist of the bill is that the complainant was damaged by the failure of the Highway Commission to furnish the necessary right of way before the work order was given, or in sufficient time for the work to have been completed within contract time thereafter. The bill also sets forth items for hire of implements, machinery, employees, insurance, and various other things therein mentioned. Also, it is in part made up of what is alleged to be improper deductions under the contract for engineering and supervising expense, for maintenance of the road after the expiration of thirty days.

The Chancellor below sustained the plea and dismissed the bill, taxing the complainant with the costs, and granting an appeal in open court to this Court, directing that certain exhibits be sent up to this Court with the testimony.

It is insisted by the appellant that the Highway Commission was liable to the complainant in an action for breach of its contract; that the statute, Code 1930, section 5006, authorizes the Highway Commission to sue and be sued; and that it comes into court with the same

liabilities for breach of contract as would an individual in such case.

After the case reached this Court we called for additional briefs, addressed to the question as to whether the Highway Commission was liable for damages on account of the matters complained of in the declaration, and the case was referred to the Court In Banc. The additional briefs have been furnished.

After full consideration, I have reached the conclusion that the Highway Commission is not subject to the suit for breach of its contract, for damages flowing from negligence or failure of its officers or employees to furnish the right of way within the stipulated period. No statute is pointed out, authorizing suits against the Highway Commission, which is a public agency and arm of the state, for breach of contract or for damages for any neglect of its officers or employes to perform the obligations stipulated for by it. The appellant relies upon the statutory right of the Highway Commission to sue and be sued, with the implications arising from such statute.

This Court has decided in a number of cases that the general authority given by a statute to sue and be sued does not render such public body, exercising public functions, liable to be sued for damages flowing from a breach of its contract. In Stewart v. State Highway Comm., 166 Miss. 43, 148 So. 218, it was held that, "General statutory authorization to sue governmental subdivision or agency does not create liability, and suit is maintainable thereunder only for liability authorized by statute;" that "General statutory authority to sue State Highway Commission held not to impose liability for negligence of its officers, agents, or employees."

In Pearl Realty Co. v. State Highway Commission, 170 Miss. 103, 154 So. 292, it was held that a lessor dealing with a highway director in execution of a lease is held chargeable with notice that the director could act only in strict compliance with the Highway Commission's or-

ders; that the State Highway Commission is required to keep minutes of its proceedings; and that the director's authority to lease must be found in orders appearing on the Commission's minutes. And held that no recovery could be had upon a lease contract there involved; that contracts and orders of the Commissions must appear on the minutes.

There is no stipulation in the contract undertaking to bind the Highway Commission for any kind of damages, or to assume any liability for negligence or breach of the contract.

A case which appears to be clearly controlling on the suit here is Board of Supervisors of Lee County v. Payne, 175 Miss. 12, 166 So. 332. In that suit Payne filed a bill in the Chancery Court against the Board of Supervisors of Lee county et al., in which he sought to recover $359.-43 on account of alleged breach of contract entered into between the Board of Supervisors, Christian and himself. The appellant, the Board of Supervisors, filed a demurrer which was overruled, and an appeal to this Court was granted by the Chancellor, to settle the controlling principles of the case. In that case the board had entered into contract to buy from Payne and Christian, during the year 1932, all of the bridge lumber necessary for use in Lee county, at prices named in the contract; except that it was provided that the Board of Supervisors of each district would have the right to purchase from any local mills situated in the district, provided it bought the lumber at prices set out in the aforesaid contract. The Court, in its opinion reviewing many authorities, held that there was no liability, and that counties are not liable for damages for neglect of public duty, since they are involuntary political divisions of state, created for governmental purposes, and organized without regard to consent or dissent of inhabitants, and since suit against a county, which is a subdivision of the state, is in effect a suit against the state, for which the consent of the legislature must be obtained.

See, also, the following authorities: State Highway Comm. v. Gully, 167 Miss. 631, 145 So. 351; State Highway Comm. v. Knight, 170 Miss. 60, 154 So. 263; Stephens v. Beaver Dam Drainage Dist., 123 Miss. 884, 86 So. 641; Parker v. State Highway Comm., 173 Miss. 213, 162 So. 162; Gulf Export Co. v. State, 112 Miss. 452, 73 So. 281; Hall v. State, 79 Miss. 38, 29 So. 994; Mississippi Centennial Exposition Co. v. Luderbach et al., 123 Miss. 828, 86 So. 517; State v. Woodruff, 170 Miss. 744, 150 So. 760.

In reference to accord and satisfaction, I think the plea was good, because while some checks were not marked "in full," accompanying the checks were the estimates and data which were deducted from the amount which would have been recoverable by the appellant, had he not accepted and cashed the checks. Prior to accepting the checks and using them, he would have had the right to resist deductions from his pay for matters brought about by failure of the Highway Commission to secure the right of way within the time agreed upon. But when a party knowingly accepts a check in full payment of demands, or of items specified in the statement accompanying the check, he takes the check as a settlement of all his claims in reference thereto. See Blue Ribbon Creamery v. Monk, 168 Miss. 130, 147 So. 329, 782; Yazoo & M. V. R. Co. v. Sideboard, 161 Miss. 4, 133 So. 669; Rucker v. King Const. Co., 159 Miss. 387, 131 So. 872; Phillips v. St. Paul Fire, etc., Ins. Co., 156 Miss. 41, 125 So. 705; May Bros. v. Doggett, 155 Miss. 849, 124 So. 476.