395 F.2d 901
 WARREN COUNTY PORT COMMISSION and the Board of Supervisors of Warren County, Mississippi, Appellants,
v.
FARRELL CONSTRUCTION COMPANY, Inc., Appellee.
FARRELL CONSTRUCTION COMPANY, Inc., Appellant,
v.
WARREN COUNTY PORT COMMISSION and the Board of Supervisors of Warren County, Mississippi, Appellees.
 No. 24644.
 United States Court of Appeals Fifth Circuit.
 June 4, 1968.
 
 Landman Teller, of Teller, Biedenharn & Rogers, Vicksburg, Miss., for appellants-appellees.
 Roger C. Landrum, and John A. Crawford, of Butler, Snow, O'Mara, Stevens, & Cannada, Jackson, Miss., for appellees-appellants.
 Before GEWIN and COLEMAN, Circuit Judges, and HUGHES, District Judge.
 COLEMAN, Circuit Judge:
 
 
 1
 This appeal involves nothing of future significance except to the treasuries of the respective litigants, and to them it is of considerable importance.
 
 
 2
 Farrell Construction Company, Inc. was the plaintiff in the court below. It is both cross appellant and appellee here, and will hereafter simply be referred to as the Company. By virtue of a contract with Vicksburg Port Commission and the Board of Supervisors of Warren County, Mississippi, the Company became the general contractor for the construction of certain terminal and river port facilities at Vicksburg. The contract price was $974,061. Because of change orders, duly entered on Board Minutes, the Company was actually paid $959,633.32.
 
 
 3
 The suit was for recovery on five claims over and above the amount specified in the original contract. Four were allowed and one was rejected by the District Court. Judgment was for the Company in the aggregate sum of $19,068.04. From this the Port Commission and the Board of Supervisors appeal. The Company cross appeals the denial of its Claim Number 3. We affirm on cross appeal. On direct appeal we affirm in part and reverse in part.
 
 
 4
 The Port Commission publicly solicited bids for the anticipated work. The Company was the low bidder and was awarded the contract. The plans and specifications upon which the bids had been taken were a part of the contract. It was recited that the Company [contractor] had examined the work site, the plans, the specifications, and relevant cost factors. It was expressly stipulated that "any failure by the contractor to acquire necessary information relating to the work shall not relieve him of responsibility for performance of his contract obligations, nor be cause for any increase in the prices quoted in his proposal".
 
 
 5
 Changes in the work were specifically provided for by Article 12, provisions for such work to be executed "with the same formality as the original contract".[1]
 
 
 6
 The published solicitation for bids stated that the Port Commission "shall act herein and make award subject to approval of the Board of Supervisors of Warren County". This was in compliance with § 7576-26, Mississippi Code of 1942, requiring county supervision of a Port Commission in the following terms:
 
 
 7
 "The board of supervisors of any such county may prescribe such further duties, powers and rights of such commission as may be within the authority of such board to delegate * * and shall provide that the acts of such commissioners shall regularly, and not less than quarterly or more than monthly, be reported to said board and be subject to its approval and concurrence by order spread upon the minutes of said board generally approving such reports and minutes. The obligations incurred and the expenditures authorized to be made by said commission shall in the manner herein set forth be subject to the approval of the board of supervisors of said county; and when and should the board decline to grant its approval of any act of such commission, it shall signify its reason for withholding that approval on the minutes of said board." [Emphasis added].
 
 
 8
 It has long been the law in Mississippi that a county board of supervisors can contract only by an order on its minutes, Bridges v. Board of Sup'rs of Clay County, 58 Miss. 817 (1881); Martin v. Newell, 198 Miss. 809, 23 So. 2d 796 (1945); Gilchrist-Fordney Company v. Keyes, 113 Miss. 742, 74 Co. 619 (1917). The only permissible method for the alteration of a contract with a board of supervisors is by a subsequent order entered on its minutes, Lamar County v. Tally & Mayson, 116 Miss. 588, 77 So. 299 (1918). Such contracts when so entered upon the minutes may not be varied by parol nor altered by a court of equity, McPherson v. Richards, 134 Miss. 282, 98 So. 685 (1924).
 
 
 9
 In fact, the general law of Mississippi is that boards of supervisors can act only by and through orders placed upon the minutes, and this requirement is so stringent that an order actually entered upon the minutes is nevertheless void if the minutes are not signed by the president of the board, or, in his inability, by the vice president of the board, within the time prescribed by law, Gardner v. Price, 197 Miss. 831, 21 So.2d 1 (1945); Brand v. Board of Sup'rs of Newton County, 198 Miss. 131, 21 So.2d 579 (1945).
 
 
 10
 Since § 7576-26, Mississippi Code of 1943, Annotated, requires that the acts, obligations, and expenditures of Port Commissions shall be regularly reported to and concurred in by the Board of Supervisors by order spread upon the minutes, both the Port Commission and the Board of Supervisors contended below and argue here that as to contract changes the formality required by Article 12 necessarily required an order of the Board of Supervisors, spread on its minutes. With this we agree, and it is conceded as to these claims that there were no such recorded orders.
 
 
 11
 A rather considerable body of case law has developed with reference to waiver of contract stipulations by supplemental instructions, oral or written, 1 A.L.R.3d 1273 (1965). The point in this case is that the Port Commission and the Board of Supervisors of Warren County are not private parties. They are public bodies, created by statute, with no power or authority beyond that granted by statute. The Company was charged with knowledge of the law, which expressly prohibited any contract, or change in a contract, except that duly recorded on the minutes. In the absence of that indispensable prerequisite these Boards, and the public they represented, could not be bound, by waiver or otherwise. Section 2924, Mississippi Code of 1942; Marion County v. Foxworth, 83 Miss. 677, 36 So. 36 (1904); Groton Bridge & Mfg. Co. v. Board of Supervisors of Warren County, 80 Miss. 214, 31 So. 711 (1902), in addition to the authorities cited supra.
 
 
 12
 We agree with appellant that Wunderlich v. State Highway Commission, 183 Miss. 428, 184 So. 456 (1938) held that once a public agency with authority to contract and subject to suit makes a contract then it must stand as if the agency were a private party. That is of no assistance because the contract in this case provided for change orders only if the same were approved by the respective Boards with the same formality as the original, to-wit, by entry on the minutes. And the record shows that the Company and the Owner did agree upon at least four change orders which were approved by the necessary minute entry.
 
 
 13
 In short, in the absence of statutory formalities neither instructions of the engineer in charge of the work nor "waiver" could authorize extra work.
 
 
 14
 * The Cross Appeal as to Claim 3.
 
 
 15
 Since, on cross appeal we affirm the District Court in its denial of the Company's third claim, (for $11,298), we discuss that item first.
 
 
 16
 This represented the cost of obtaining substitute fill dirt, made necessary when dirt obtained from the designated pit proved unsuitable for the intended use. The contract called for "unclassified excavation" at a specified unit price for an estimated total of 127,000 cubic yards. This excavation would provide fill soil for a warehouse foundation and would, at the same time, excavate an area of the proposed facility. This work was subcontracted. It was then discovered that the soil removed from the designated area was unsuitable because of difficulty of compaction caused by a tendency to swell and shrink. The Company notified Port Authority engineers of this defect and asked to be allowed to obtain suitable fill. The request was denied on the ground that the Company soil tests were unsatisfactory and that the subcontractor could use the available soil. Subsequently, at Company request, the Port Commission granted permission to obtain the needed fill from another area "at no cost or obligation to the Port Commission or Warren County."
 
 
 17
 The additional excavation was not within the terms of the original contract, and the Company predicated its claim for payment upon § 23.03(e), Mississippi Standard Specifications for Road and Bridge Construction, which specifications were incorporated in the original contract. The section requires payment for substitute fill when that specified is deemed unsuitable "in the opinion of the engineer". The District Court disallowed the claim on the ground that the engineer had not believed the fill unsuitable, but had directed that the original contract be followed. The Company argues that, despite the conclusion of the engineer, it has proven the unsuitability of the fill — consequently, the direction of the engineer breached the contract and the Company should be compensated in the amount of its extra expenses. However, the Standard Specifications leave this matter in the discretion of the engineer; in addition, it appears that the Company undertook to provide the additional fill with the understanding, expressly imposed, that it would do so at no additional cost to the owners.
 
 
 18
 Finally, the Company points to Article 5 of the contract, which provides that "payment will be made for the actual number of units that are incorporated in or made necessary by the work covered by the contract". Company's contention is that the additional excavation was both "necessary" and "incorporated in" the work. This is of no avail when the necessity and the incorporation were protested by the owner's representatives but was accomplished, at the insistence of the contractor, with the limitation that no additional cost liability would be incurred by the owners.
 
 
 19
 We, therefore, find no basis for disturbing the judgment of the District Court on this item.
 
 
 20
 Company's First Claim for $3,252.09.
 
 
 21
 We reverse the allowance of this claim. It was for expenses incurred in taking soil borings for testing. The design had been based on soil exploration performed at some distance from the specified location and it was determined that additional tests should be made. The engineer representing the Port Commission agreed to this and the Commission paid an independent firm to make the tests. The Company, however, was instructed by the engineer to furnish labor and a barge to assist that firm in taking the borings. The trial court found that "a change order was discussed with the resident engineer, but as the soil tests were urgent, plaintiff's employees proceeded under the engineer's oral orders". As we have pointed out, this could not and did not bind the owners to pay for these items.
 
 
 22
 This was not an emergency "endangering life or property" [Fn. 1]. Nor would the delay in the project occasioned by lack of appropriate data justify allowance. In the contract, the Company represented that it had examined the premises prior to making the contract.
 
 
 23
 The Company's Second Claim for $13,478.63.
 
 
 24
 We affirm the allowance of this claim. It was originally estimated that 21,500 tons of stone rip-rap would be required to stabilize the river bank at the facility site. This was a unit item bid at $9.23 per ton, in place. The unloaded cost was $4.52 per ton. Due to a change in design, 31,915.05 tons were used and paid for. Getting the rip-rap from the quarries in Missouri to the port site in Vicksburg was no simple matter. It had to be scheduled for delivery by river barge. In attempting to fulfill its contract the Company ordered 2,982 tons too much stone. It made efforts to sell this to others but could not do so. This, of course, was an item clearly covered by the contract, on a unit basis. The District Court found that under the circumstances, plaintiff's order of the rip-rap was reasonable, was made prior to the engineer's stop order, could not be stopped in transit, and that the plaintiff should be paid for the excess. In other words, this was a product of a change in the original plans, failure to pay for it was a breach of contract, and the Company was entitled to be reimbursed its actual costs. We do not find this to be clearly erroneous and it is affirmed.
 
 
 25
 The Company's Fourth Claim for $1,937.31.
 
 
 26
 We reverse the allowance of this claim. This represented the Company's costs in rebuilding parts of the concrete foundation of the terminal building. The allegedly unsuitable fill was used as a base for part of this building. The portion of the foundation thus affected settled during construction and was rebuilt by the Company. The Warranty Clause in the original contract [Article 17] was to the effect that any defects due to the use of improper materials or of improper workmanship discovered within one year shall be made good by the contractor. No oral assurance or agreement of the engineer could avoid this warranty.
 
 
 27
 The Company's Fifth Claim for $828.
 
 
 28
 We reverse the allowance of this claim in the sum of $400. This represented the expense of installing an overhead crane, furnished by the Port Commission at the job site. The contract required the Company to unload, uncrate, store, erect, and test the crane. As it was due to do, the crane arrived unassembled. The Company hired a sub-contractor to accomplish the internal wiring. The Company complained to the project engineer that some, if not all, of this wiring was not contemplated by the contract and that the Commission would be expected to pay for it. The engineer responded that it was the Company's work, to go ahead and do it. In view of the express language of the contract, requiring the Company to erect the crane, we perceive no basis for liability on this item and the District Court assigns none in its finding.
 
 
 29
 In summary, the judgment denying plaintiff's recovery on its Claim Number Three in the sum of $11,298, is affirmed. That part of the judgment allowing the plaintiff to recover $13,478.63 on its Claim Number Two is affirmed. Those portions of the judgment allowing recovery on Claims Number One, Four, and Five are reversed. The case is remanded to the District Court with directions to enter judgment for the plaintiff in the sum of $13,478.63.
 
 
 30
 Affirmed in part, and in part reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 "In addition the owner shall have authority to make minor changes in the work not involving extra cost, and not inconsistent with the purposes of the work, but otherwise, except in an emergency endangering life or property, no extra work or change shall be made unless in pursuance of a written order by the Owner stating that he has authorized the extra work or change, and no claim for an addition to the lump sum items shall be valid unless the additional work was so ordered."
 Similar formality was required for "Claims for Extra Cost" in Article 13.
 "If the contractor claims that any instructions * * * issued after the date of execution of the Contract involved extra cost under this Contract, he shall give the owner written notice thereof within a reasonable time, after the receipt of such instructions, and in any event before proceeding to execute the work, except in emergency endangering life or property, and the procedure shall then be as provided for changes in the work. No claim shall be valid unless so made". [Emphasis added.]