344 So.2d 146 (1977)
Judy BERRY and Donald A. Berry
v.
HINDS COUNTY, Mississippi.
No. 49135.
Supreme Court of Mississippi.
March 30, 1977.
*147 Young, Scanlon & Sessums, Pat H. Scanlon, Brad Sessums, Jackson, for appellants.
Watkins & Eager, Thomas H. Watkins, John M. Putnam, Jackson, for appellee.
Before PATTERSON, ROBERTSON and BROOM, JJ.
ROBERTSON, Justice:
This suit involves the doctrine of governmental immunity of a county from suit.
Suit was brought by Judy and Donald A. Berry against Hinds County, Mississippi, in the Circuit Court of the First Judicial District of Hinds County, to recover damages for personal injuries suffered by them when their automobile crashed into a collapsed bridge which spanned a large ditch on Longino Road in Hinds County. The accident happened about 6:30 p.m. on November 22, 1970, as the plaintiffs with their children were riding in the family automobile.
A general demurrer was sustained to the declaration, and the plaintiffs declining to plead further, the judgment was made final and the declaration dismissed.
On appeal, the Berrys contend that the doctrine of governmental immunity should be abolished  that there is no valid reason for continuing this outmoded and antiquated doctrine. The appellants further contend that this doctrine of sovereign or governmental immunity was created by the courts and therefore should be abolished by them.
Appellants cite Ayala v. Philadelphia Board of Public Education, 453 Pa. 584, 305 A.2d 877 (1973), as their most persuasive authority. In a very lengthy opinion, by a four-to-three vote, the Supreme Court of Pennsylvania reached this conclusion:
"We now hold that the doctrine of governmental immunity  long since devoid of any valid justification  is abolished in this Commonwealth." 305 A.2d at 878.
This broad and all-encompassing ruling was made in spite of the fact that the suit was only brought against the Philadelphia Board of Public Education for injuries suffered by William Ayala, Jr. when his arm was caught in a shredding machine in the upholstery class of the Carrol School in the City of Philadelphia.
The appendix to the opinion in Ayala lists eighteen states (including the District of Columbia) which have judicially abrogated the doctrine of governmental immunity. Pennsylvania, of course, should be added to the list, and, also, Alabama, which abrogated the doctrine as to counties (by a five-to-four vote) in Lorence v. Hospital Board of Morgan County, 294 Ala. 614, 320 So.2d 631 (1975). This makes a total of twenty states. Seven states are listed as having statutorily abrogated the doctrine.
One hundred years ago in the landmark case of Brabham v. Board of Supervisors of Hinds County, 54 Miss. 363 (1877), this Court stated its views on the doctrine of governmental immunity:
"The plaintiff in error sued the defendant in error to recover damages for the death of her husband, produced by the falling of a county bridge while he was crossing it with his wagon and team.
"If a county can be held liable for damages suffered in consequence of neglect to repair a county bridge in any case, it should be held so in this. At common law, a county could not be so held liable. No statute makes it liable. The `demands,' `accounts' and `claims' contemplated in the statutes to be audited and allowed by boards of supervisors, and authorized to be sued on, if allowance is refused by the board, are manifestly such liabilities of the county as are provided for by some statute. A county can have no liability except as authorized, expressly or by necessary implication, by some statute. Counties are political divisions of the State, created for convenience. They are not corporations with the right to sue and be sued as an incident *148 to their being, but are quasi corporations, invested by statute with certain powers, and subject to certain liabilities, and can neither sue nor be sued, except as authorized by statute. The right to maintain a suit like this against a county is not only outside of the contemplation of the statutes, but is opposed by every consideration of sound policy." 54 Miss. at 364.
Over the years since Brabham, Mississippi has steadfastly adhered to this fundamental doctrine. Owens v. Jackson Municipal Separate School District, 264 So.2d 892 (Miss. 1972); Lowndes County, District 5 v. Mississippi State Highway Commission, 220 So.2d 349 (Miss. 1969); Board of Education of Forrest County v. Sigler, 208 So.2d 890 (Miss. 1968); Board of Supervisors of Lee County v. Payne, 175 Miss. 12, 166 So. 332 (1936); Simpson County v. Kelly, 175 Miss. 596, 166 So. 532 (1936); Federal Land Bank v. Leflore County, Mississippi, 170 Miss. 1, 153 So. 882 (1934); McNulty v. Vickery, 126 Miss. 341, 88 So. 718 (1921); City of Grenada v. Grenada County, 115 Miss. 831, 76 So. 682 (1917).
In Monaco v. State of Mississippi, 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1282 (1933), the Supreme Court of the United States said:
"The `entire judicial power granted by the Constitution' does not embrace authority to entertain such suits in the absence of the State's consent. (Citations omitted).
"Protected by the same fundamental principle, the States, in the absence of consent, are immune from suits brought against them by their own citizens or by federal corporations, although such suits are not within the explicit prohibitions of the Eleventh Amendment." 292 U.S. at 329-30, 54 S.Ct. at 751, 78 L.Ed. at 1289.
In Board of Supervisors of Lee County v. Payne, 175 Miss. 12, 166 So. 332 (1936), this Court pointed out that counties and municipalities of the state are not on the same plane and that there are some fundamental differences between them. In Payne, we said:
"It is argued that counties and municipalities are upon the same plane, and should be held alike liable for a breach of a contract. The courts have universally made a distinction between counties and other municipal corporations, such as cities, towns, and villages. `The principal ground upon which counties are not held liable for damages in actions for their neglect of public duty is that they are involuntary political divisions of the state, created for governmental purposes, and are organized without regard to the consent or dissent of the inhabitants. The theory upon which municipal corporations proper are held liable in such cases is that they are voluntary associations created and organized at the solicitation of, and with the free consent of, the inhabitants, under the laws of the state, and that the benefits accruing to the people by such incorporation compensate them for the liability. Another reason is that since the county is but a political subdivision of the state, a suit against the county is, in effect, a suit against the state, and that therefore an action will not lie without the consent of the legislature'." 175 Miss. at 23, 166 So. at 335 (Emphasis added).
While it might be true that this doctrine was first enunciated by the English courts, still it came to this country as a part of the Common Law and early in the history of the United States was adopted as a sound and reasonable concept of the law.
The Legislature long ago began the process of chipping away at this doctrine of governmental immunity in appropriate areas. In 1914, the Legislature passed an act which provided:
"The board of supervisors of any county shall have the power, in their discretion, to allow damages sustained to stock and other property injured or destroyed while traveling along the public highways maintained by the county where such loss is caused by defects in a bridge, causeway or culvert in such highway. No such payment shall be allowed unless such defects in such bridge, causeway or culvert *149 was the proximate cause of the injury and was not apparent or discoverable by the exercise of reasonable diligence, and no such payment shall be made unless such defect had existed for such a time that the failure to remedy or repair the same amounts to gross carelessness on the part of the county. Such payments shall be made from the county road and bridge funds, or from the road funds of the district where such accident occurred, as the circumstances render proper.
"A claim under section 19-13-51 for accidents occurring shall be made in writing, itemized and sworn to, and shall be filed within three months after such accident occurs, and shall remain on file with the clerk of the board of supervisors for sixty days before the first day of the term at which it comes up for hearing. Notice of its pendency shall be published in a newspaper published in the county at least one time before such claim comes up for hearing, and if there be no paper in such county, by posting notices at the courthouse and other public places.
"No payment shall be made hereunder except by a four-fifths recorded vote of all the members of the board of supervisors. Where the property injured or destroyed is properly assessable, no evidence of the actual value of the property injured or destroyed shall be received or considered, but the assessed value thereof as shown by the assessment rolls of the county shall be the only evidence of value, and the damages allowed shall be fixed in proportion. Where the property injured or destroyed is not properly assessable and was not assessed, then the board of supervisors shall receive evidence of the actual value of the same, and shall allow damages in proportion. Sections 19-13-51 to 19-13-55 shall not be construed as creating any enforceable liability against any county."
Mississippi Code Annotated, §§ 19-13-51, 19-13-53, and 19-13-55 (1972).
It is apparent from even a cursory reading of these statutes that the legislature felt it necessary to carefully limit and circumscribe the approval of such claims. Even then in order for there to be no misunderstanding, the legislature said:
"Sections 19-13-51 to 19-13-55 shall not be construed as creating any enforceable liability against any county."
In 1972, the legislature provided for suits against counties or school districts operating school busses. Mississippi Code Annotated section 37-41-37 (Supp. 1976), provides in part:
"In the event of any accident resulting in the death of or injury to any person or in damage to property (a) arising out of the negligent operation of any school bus or other vehicle owned by any county or any municipal separate school district or public junior college district or consolidated school district, or operated by such county or municipal separate school district or public junior college district by private contract, for the transportation of pupils to and from the public schools of such county, or municipal separate school district or junior college, or (b) caused by a bus while being operated in pursuance of any activity of any of such schools, or (c) arising by reason of negligence in the maintenance, upkeep, repair or mechanical failure of such vehicle, any person receiving such injuries or sustaining such damages shall have a right of action against the county or municipal separate school district or junior college district or consolidated school district, which operates such vehicle. Such county or municipal separate school district or junior college district or consolidated school district, may not plead the defense of governmental immunity in bar to any such action or recovery, and such suit may be tried as any other civil action." (Emphasis added).
Again the Legislature thought it necessary to limit and circumscribe recovery and to provide for funds out of which such claims could be paid. In Section 37-41-39 the Legislature provided for counties and school districts to pay into an "accident contingent fund" to be set up in the state treasury.
*150 In Section 37-41-41 (Supp. 1976), the Legislature placed a limit of $10,000 on each such claim for one person, and $50,000 for any one accident. A limitation of $1,000 per claimant per accident was placed on a claim for property damage, and $550 on a claim for hospital, medical and doctor bills per person per accident.
In 1973, the Legislature provided for the purchase of liability insurance by counties:
"The board of supervisors of any county in this state is authorized, in its discretion, to obtain and pay for liability insurance covering each, all or any of the motor vehicles of the county so as to cover the following damages for injury to persons or property, or both, caused by the negligence of any duly authorized officer, agent, servant or employee of such county while operating such motor vehicle in the performance of his official duties, said policy to be written by the agent or agents of a company or companies authorized to do and doing business in the State of Mississippi. Provided, however, that on each vehicle the insurance policy shall be a minimum of ten thousand dollars ($10,000.00) for personal injury to any one (1) person in any one (1) accident, or a minimum of twenty thousand dollars ($20,000.00) for personal injury to two (2) or more persons in any one (1) accident, and a minimum of five thousand dollars ($5,000.00) property damage. All policies shall be subject to the approval of the board of supervisors and the premiums thereon shall be paid from the general fund of such county, road and bridge maintenance funds of such county or districts in such county. The board of supervisors of any county is authorized, in its discretion, to purchase general liability insurance coverage for its members and county employees in the official performance of their elective or appointive duties. Said general liability policy shall be written by the agent or agents of a company or companies authorized to do and doing business in the State of Mississippi. The monetary limits of any such policy shall be set by the board of supervisors in amounts they feel are adequate and reasonable in light of existing circumstances. The premiums on such policies shall be paid from the county general fund or from any other available county funds.
"If liability insurance is in effect in such county, such county may be sued by anyone affected to the extent of such insurance carried; provided, however, that immunity from suit is only waived to the extent of such liability insurance carried and a judgment creditor shall have recourse only to the proceeds or right to proceeds of such liability insurance." Miss. Code Ann., § 19-7-8 (Supp. 1976). (Emphasis added).
Our Federal courts have not seen fit to abolish the doctrine of governmental immunity by judicial fiat. They exercised the proper judicial self-restraint and waited for Congress to act. In 1946, Congress (representing all the people) enacted the Federal Tort Claims Act (28 U.S.C.A. §§ 2671-2680). This law has spawned prolific and, at times it seems, unlimited litigation.
Appellants contend that they were authorized to bring suit and did bring suit under the provisions of Mississippi Code Annotated § 11-45-17 (1972), which provides:
"Any county may sue and be sued by its name, and suits against the county shall be instituted in any court having jurisdiction of the amount sitting at the county site; ..."
Long ago, we held, in State Highway Commission v. Gully, 167 Miss. 631, 145 So. 351 (1933):
"A general statutory grant of authority to sue a governmental subdivision or agency does not create any liability, and suit may be maintained thereunder only for such liability as is authorized by statute, expressly or by necessary implication. City of Grenada v. Grenada County, 115 Miss. 831, 76 So. 682; Brabham v. Board of Supervisors of Hinds County, 54 Miss. 363, 28 Am.Rep. 352. At the time these cases were decided, the statute provided that any county might sue or be sued by its name, section 3484, Rev.Code *151 1871, section 309, Code 1906; and it was expressly held in each of these cases that there can be no liability against the state or its political subdivisions or agencies unless it is expressly or impliedly created by statute." 167 Miss. at 647, 145 So. at 354. (Emphasis added).
Of course, the courts, as well as the legislature, have the undoubted right to abrogate the doctrine of governmental immunity. We are of the opinion, however, that the legislature is in a better position to limit and restrict claims that can be asserted and to provide the ways and means for the paying of such claims (either by taxation or appropriation), if it should see fit to do so. Therefore, we decline to abolish the doctrine of governmental immunity at this time by judicial decision.
The trial court was correct in sustaining a general demurrer to the declaration. The judgment of the circuit court is, therefore, affirmed.
This case was considered by a conference of the Judges en banc.
AFFIRMED.
All Justices concur.